is neither bill of exception nor assignment of error in the record; nor does the record disclose error upon its face.

For the reasons assigned, the conviction and sentence appealed from are affirmed.

(124 So. 670)

No. 30038.

STATE v. CHEVALLIER.

Nov. 4, 1929.

S. R. Holstein, of Winnsboro, for appellant.

Percy Saint, Atty. Gen., and Harry Fuller, Dist. Atty., of Winnfield (A. D. Flowers, of Jena, and E. R. Schowalter, Asst. Atty. Gen., of counsel), for the State.

THOMPSON, J. The defendant was tried for murder, was convicted of manslaughter and sentenced to serve from three to seven years in the penitentiary.

On the day the case was called for trial, the defendant through counsel filed a motion for a continuance based on the absence of a witness whose testimony it was alleged was important and material. It was stated in this application that the witness was temporarily in the state of Texas on a visit to his parents.

The subpoena for the witness had been issued on the day the defendant was arraigned, and the sheriff had made a very earnest effort to locate him, without success. The sheriff was informed that a warrant for the arrest of the witness on a charge of larceny was in the hands of the authorities of the adjoining parish of Catahoula, and that the said witness had left the state to avoid arrest.

The judge and the sheriff informed the defendant and his counsel on Monday preceding the day fixed for trial, which was Thursday,

that the witness could not be located, but neither the defendant nor his counsel could or would give any information as to the whereabouts of the witness.

It was not until the filing of the motion for a continuance that the court or the sheriff was informed that the witness was out of the state.

■ The rule of law has wisely left the matter of granting or refusing a continuance to the sound discretion of the presiding judge, and his ruling will not be interfered with unless manifestly arbitrary and unjust. Here the defendant was informed by the sheriff's return that the information he had received was that a warrant was out for the arrest of the witness and that he had left the state on that account, and yet the defendant made no effort to show that the information given the sheriff was not true, but rested on the mere statement in the affidavit that the witness was only on a visit somewhere in the state of Texas and would return in a few weeks.

The law exacts something more in such cases than the mere allegations of the motion for a continuance, which at most are but the conclusions of the pleader. There must be disclosed to the trial judge such facts and circumstances as will satisfy him that there is a reasonable probability that the witness may be had at the time to which trial is deferred.

That was not done in this case, and the judge was justified in assuming that the witness was a fugitive from justice and that there was a strong probability that he would not return voluntarily. State v. Taylor, 167 La. 1116, 120 So. 875, and authorities there cited.

The second bill has been abandoned by counsel for defendant. We might say, however, that the ruling of the court was correct.

■ The third bill involves the refusal of the court to admit in evidence a statement said to have been made to a third party by the defendant, to the effect that he shot the deceased but had to do it. The trial judge was of the opinion that the statement was not a part of the res gestæ and was self-serving. We approve the ruling. The shooting was over; the difficulty had ended. The two participants had left the scene where the shooting had occurred; the victim, fatally wounded, was approaching his home, where he met his wife.

The defendant had proceeded up the road on his way to his home, when he came upon the witness Ray sitting in his car parked on the road, and, without waiting for any inquiry from Ray, proceeded to make the voluntary statement that he shot Mr. Huffman, but that he had to do it, and, before Ray could say anything, he asked Ray if he had seen it.

In State v. McLaughlin, 138 La. 958, 70 So. 925, quoting from the syllabus, which is sustained by the decision, it was said:

"In determining whether an exclamation or statement, made by a person who has received a mortal wound should be received in evidence, as part of the res gestæ, against the slayer, on trial for murder, the question is not whether such exclamation, or statement, was made contemporaneously with the receipt of the wound, or 'immediately' before or after * * * but whether it was a spontaneous and unreasoned expression, superinduced by a state of mind created by the receipt of the wound, and continued from the moment of such creation to that of the utterance of the expression."

In that case authorities were cited to show that the modern doctrine has relaxed the ancient rule that declarations, to be admissible as part of the res gestæ, must be strictly con-

temporaneous with the main transaction. The rule now generally allows evidence of such statements, declarations, or exclamations, where they appear to have been made under the immediate influence of the principal transaction and are so connected with it as to characterize or explain it.

This later rule was affirmed in State v. Bussey, 162 La. 394, 110 So. 626, 629, in the following language:

"Exclamations made by the victim during or immediately after the commission of a crime, and in the excitement of the occasion, are generally regarded as a part of the res gestæ. * * *

"Unless the expression was a spontaneous and unreasoned expression, superinduced by the excitement or suffering caused by the crime itself, it is not a part of the res gestæ."

In the cases cited, the court was considering statements made by the victim or by the deceased.

The rule, however, is applicable to statements made under like circumstances by the accused.

Applying the test to the statement made by the defendant, it is clear that it formed no part of the res gestæ. The statement was not an incident of the crime, and formed no part of it. It was the act of one of the participants after the crime had been completed attempting to characterize the act and to state the part he had played therein. Not forming a part of the res gestæ the statement sought to be introduced was self-serving and so intended when made.

■ The fourth bill was taken to the admission of evidence going to show that a witness for defendant had told the defendant several weeks before the killing that the deceased objected to the kind of house that the defendant was conducting in the community near the home of the deceased.

The purpose of this testimony was to show motive and feeling on the part of defendant against the deceased. There was no error in the ruling.

After the testimony just referred to had gone to the jury, the defendant wanted to go into all of the details of the conversation had between the witness and the defendant and to prove what the witness said to defendant and what defendant said to the witness. The ruling sustaining the objection was correct.

The defendant was not denied the privilege of inquiring as to exactly what was told defendant by the witness and as to the truthfulness of the statement he made. The objection and ruling just mentioned forms the subject of the fifth bill.

The sixth bill covers the same matter as that discussed under bill No. 3. The defendant was asked while on the stand in his own behalf to state what he had told the witness Ray after he had left the place of the shooting. If the statement could not be proved by Ray as not being of the res gestæ, it was for the same reason inadmissible as coming from the defendant as a witness on his own behalf.

■ After the state had closed its evidence in chief, the attorney for the defendant asked the court to grant him two hours to consult with the witnesses for the defendant.

The court granted an hour, but, as a matter of fact, the counsel had one and a half hours.

This appeared to the trial judge sufficient time, and we are not prepared to say that counsel should have had a half hour additional time.

Such matters must of necessity be left to the district judge, who has the discipline of his own court and is cognizant of all that takes place during the trial. The crime was committed on the 8th of April, and the de-

fendant was arrested on the same day. He employed counsel shortly after his arrest, and the same counsel who appeared before this court represented the defendant throughout the proceedings in the lower court. Counsel had something like two weeks to prepare for the defense. In the absence of a showing to the contrary, we must assume that the time allowed was sufficient.

The eighth and last bill was reserved to the overruling of a motion for a new trial, and presents nothing that we have not already considered.

Not finding any error in the several matters complained of, the conviction and sentence are affirmed.