186 La. 447

### STATE v. THORNHILL.

### No. 34202.

Supreme Court of Louisiana.

Feb. 1, 1937.

S. R. Holstein, of Winnsboro, for appellant.

Gaston L. Porterie, Atty. Gen., James O'Connor, Asst. Atty. Gen., and Harry N. Anders, Asst. Dist. Atty., of Winnsboro ( D. J. Anders, of Winnsboro, of counsel), for the State.

ODOM, Justice.

The defendant was indicted for murder on Tuesday, November 3, 1936. On the same day he was arraigned and pleaded not guilty, and his case was set for trial for Tuesday, November 10. He was convicted as charged, without capital punishment, and sentenced to hard labor for life. From that conviction and sentence he has appealed.

When the case was called for trial on November 10, the defendant through counsel moved for a continuance, on the ground that one of his witnesses, H. M. Gross, was absent and that his attendance could not be procured for the trial on that date. It was alleged in the motion for continuance that the witness was only temporarily absent from the State of Louisiana on a visit to Chicago and that said witness would return to Franklin parish before the next regular term of the court, at which time the defendant could and would have the said witness present to testify in his behalf.

The motion alleges that defendant could not safely go to trial without the presence of this witness. It sets out that if the witness were present he would testify that at the time of the difficulty which resulted in the death of the deceased, a man named Foy, he (the witness) was present and begged and implored the said Foy not to attack the defendant; that notwithstanding the said pleading, Foy in a violent manner attacked the defendant and knocked him down some ten or twelve times; that the witness and others begged Foy to desist, whereupon the said Foy left the room but came back and renewed the attack upon the defendant; and that he (the witness) and others attempted to prevent the said Foy from again attacking the accused. In sum, it is alleged in the motion that the defendant killed the said Foy in self-defense, or at least under such circumstances as would reduce the crime from murder to manslaughter.

It was alleged in the motion that the testimony of the absent witness was material and necessary in the accused's defense, and that he could establish the above stated facts by no other witness.

It does not appear in the record, nor is it suggested by the State, that the defendant did not use due diligence to procure the attendance of this witness at the trial of the case. It seems that on the day that the defendant was arraigned and his case set for trial, he gave to his counsel the names of his witnesses, among them being H. M. Gross, and that counsel immediately had subpoenas issued for all of them and the subpoenas put into the hands of the sheriff. The sheriff made diligent search for the witnesses, but could not find Gross. On the trial of the motion for continuance, the defendant proved by a man named Bud Emfinger, who is an uncle of the accused, that he had seen the witness Gross a few days prior to the date on which the accused was indicted, and that Gross told him he was leaving for the city of Chicago on a visit and that he would return by Thanksgiving, and if not by Thanksgiving, certainly not later than Christmas Day; that the witness Gross took nothing with him except a small handbag; and that he left his wife in Franklin parish.

The per curiam of the district judge attached to the bill of exception which defendant retained to the ruling of the judge refusing to grant the continuance reads as follows:

"On trial of motion for continuance of this case one witness Bud Emfinger, uncle of the accused, was sworn for defendant. He swore that H. M. Gross had come here from Chicago about one year ago; that he returned to Chicago, taking only a hand bag, about three weeks before trial of this case; that his wife had gone to live with her father; and that he, Gross, would eat Xmas dinner here. There was no testimony that Gross owned any other property that he was leaving here, nor was there any testimony that he intended to return here to live, the only statement being that he would eat Xmas dinner here. The court concluded that defendant did

524

not show any reasonable probability that the witness would be available for any future trial.

"There was no evidence offered on the trial of the motion for continuance that the evidence to be given by Gross could not be given by any other witness, and this could not possibly be true because the matter occurred at a public dance hall and saloon, and about fifteen witnesses who were present testified on the trial of the case. Not one witness testified as outlined in motion for continuance. There were two defense witnesses who testified some what as outlined in the motion, but the court was not impressed with their testimony, and the jury evidently disregarded it."

Article 320 of the Code of Criminal Procedure reads as follows:

"The granting or refusing of any continuance is within the sound discretion of the trial judge; provided, that any arbitrary or unreasonable abuse of such discretion may be reviewed by the proper appellate tribunal on appeal."

Article 322 of the Code of Criminal Procedure provides that every motion for continuance based upon the absence of a witness must show a "probability" that the witness may be had at the time to which the trial of the case may be deferred. The trial judge seems to have thought that no probability was shown in this case that the attendance of this witness could be procured at a subsequent time. We think there was. The witness Gross left the State, according to the testimony, for the purpose of making a visit to his former home in Chicago. He left his wife in the parish of Franklin, where he resided, and stated that he intended to return within a short time. It is not suggested that there had been any rupture between Gross and his wife, and even if he owned no property in the parish of Franklin, it is reasonable to assume, we think, that he intended to return to his wife and home. There would seem to be no reason why he should not return. The judge says that there was no testimony that Gross intended to return here to live. The fact that he had been living in the parish of Franklin and that he stated that he intended to return would indicate that he intended to return to the parish to live.

The motion for continuance sets out that the facts which defendant expected to establish by the testimony of the witness Gross could not be obtained from any other witness. The judge seems to have thought that inasmuch as the tragedy took place in a dance hall where there were assembled many people, defendant could have proved the same facts by others. That does not necessarily follow. There may have been such features and circumstances connected with the difficulty which resulted in the death of Foy which could not have been established definitely by others who attended the dance. The others may not have seen what Gross saw. The judge says that there were two defense witnesses who testified "somewhat as outlined in the motion," but that the court was not impressed with their testimony. It may be, however, that if Gross had been present and had testified, both the court and the jury would have been impressed with his testimony. No one can tell. A defendant is entitled to the opportunity of making out his defense by his own witnesses, and when his witnesses are absent and cannot be procured at the trial, he is entitled to a continuance on making reasonable showing that their presence can probably be procured at the next or some subsequent session of the court. We think such a showing was made in this case.

We note that counsel for the State have cited the case of State v. Chevallier, 169 La. 135, 124 So. 670, 671, where this court approved the ruling of the trial court in refusing a continuance. But the facts in that case were so entirely different from the facts in this case that it does not support counsel's contention.

In that case the judge and the sheriff informed the defendant and his counsel on Monday preceding the day fixed for the trial, which was Thursday, that one of his witnesses could not be found, and the court said that "neither the defendant nor his counsel could or would give any information as to the whereabouts of the witness." It was not until the filing of the motion for continuance that the court and sheriff were informed that the witness was out of the state. In that case there was no probability that the attendance of the witness could be procured for a subsequent trial because at the time the sheriff held a warrant for the arrest of the witness, who had left the State on that account. This court said that the trial judge "was justified in assuming that the witness was a fugitive from justice and that there was a strong probability that he would not return voluntarily."

In support of that ruling, this court cited State v. Taylor, 167 La. 1113, 1116, 120 So. 875, 876. The facts in the Taylor Case were that the testimony established that the witness not only had left the State, but that he had "aided, abetted, and assisted in the commission of the crime, and that he left almost immediately after its commission."

Certainly there was no probability that the witness would ever return to the State under such circumstances. In the case at bar we think the defendant was entitled to a continuance under the showing made.

For the reasons assigned the conviction and sentence are set aside, and the case is remanded for a new trial.

O'NIELL, C. J., absent.