339 So.2d 735 (1976)
STATE of Louisiana
v.
Xavier MILES.
No. 57907.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
*736 Orleans Indigent Defender Program, Robert J. Zibilich, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged Xavier Miles with aggravated rape in violation of LSA-R.S. 14:42. After a trial by jury, the defendant was found guilty as charged. The trial judge imposed the mandatory death sentence. He appeals his conviction and sentence, relying upon six assignments of error.[1]

ASSIGNMENT OF ERROR NO. 13
In Assignment of Error No. 13 defendant complains of the trial court's refusal to grant him a continuance when one of his witnesses could not be located.
At the outset of the defendant's trial, prior to the State's commencement of its opening argument, it was noted that defense witness, Mildred Smith, was not present. Defense counsel stated that without the witness, the defense was not ready for trial and asked "the court to reserve our rights." Responding to the defense, the court issued an instanter subpoena and ordered that the neighborhood be canvassed. In response to the court's inquiry about the return, the deputy sheriff noted the return showed the address was an empty house.
*737 Defense counsel countered that the address was "good." The court ordered the case to proceed, over a defense objection. The State then made its opening statement, and the court adjourned.
The next day the defense moved for reissuance of the instanter subpoena, again informing the court that the address given was correct. The court ordered the reissuance; without further objection, trial testimony commenced.
In brief, defendant argues that this assignment of error deals with the denial of a defense motion for a continuance to procure the presence of Mildred Smith and urges that the trial judge abused his discretion in failing to grant the motion. Citing State v. Thornhill, 186 La. 447, 172 So. 522 (1937), defendant argues that he was entitled to the continuance because he showed the witness could be procured readily. He argues that the refusal to grant the continuance resulted in a denial of the constitutional right to compulsory process.
Louisiana Code of Criminal Procedure Articles 707 and 709 provide, respectively:
"An application for a continuance shall be [made] by written motion alleging specifically the grounds upon which it is based, and when made by a defendant, must be verified by his or his counsel's affidavit."
"A motion for a continuance based upon the absence of a witness must state:
"(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
"(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
"(3) Facts showing due diligence used in an effort to procure attendance of the witness."
Defense counsel's request that the court "reserve . . . [defendant's] rights" does not qualify as a motion for continuance. Moreover, if construed as an oral motion for a continuance, it does not satisfy the requirements of the above articles.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 15
In Assignment of Error No. 15, defendant complains that the trial court erroneously granted the State's challenge for cause of prospective juror Robert Pullet based on Pullet's opposition to capital punishment. He relies upon Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
When asked by the State if he "could. . . consider" the verdict of guilty as charged (which would automatically result in the imposition of the death sentence), Pullet answered, "Yes, I could consider it but I don't believe in capital punishment."
The State correctly argues that this "Witherspoon- -type" issue is no longer valid in light of the recent United States Supreme Court decisions, Roberts v. Louisiana, ___ U.S. ___, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976); and Selman v. Louisiana, ___ U.S. ___, 96 S.Ct. 3214, 49 L.Ed.2d 1212 (1976), holding the Louisiana death penalty for rape unconstitutional. We have consistently held that a defendant insulated from the death penalty has no valid Witherspoon complaint. See, e.g., State v. Rester, La., 309 So.2d 321 (1975); State v. Adams, La., 302 So.2d 599 (1974); State v. Brown, La., 302 So.2d 290 (1974).
Assignment of Error No. 15 is without merit.

ASSIGNMENT OF ERROR NO. 16
In Assignment of Error No. 16, the defendant complains of the trial court's denial of his motion for a mistrial. Defense counsel's motion is based on the State's reference in its opening statement to what defendant told the victim's boyfriend, that is, "Wait, wait. I had to do it. I had to do it. Let me explain. You'll understand what she was going [sic, doing] to my family. Wait."
*738 The testimony at trial discloses that the aggravated rape occurred during the daylight hours when the defendant, the victim's first cousin, sought entrance to her apartment ostensibly to use the bathroom facilities. After he entered the apartment, he overcame the victim, removed handcuffs from a paper bag he was carrying and secured her wrists, taped her mouth with adhesive tape, which was also in the bag which he brought, threatened her with a kitchen knife and raped her. During the commission of the offense, the victim's boyfriend attempted to admit himself to the apartment by using a key which the victim had given him. The defendant had engaged the safety chain, however, and he could not gain entry. Realizing that the victim's boyfriend was attempting to enter the apartment, defendant released her, instructing her to "get rid" of her friend. The victim seized the opportunity to escape, telling her boyfriend of the offense as soon as she approached him and admitted him to the apartment. The two men scuffled and the victim ran to a neighbor's house to call the police. Before the police arrived on the scene, the defendant told the victim's boyfriend, "Wait, wait. I had to do it. I had to do it. Let me explain. You'll understand what she was going [sic, doing] to my family. Wait."
Defense counsel cites the prohibition of Louisiana Code of Criminal Procedure Article 767, which provides:
"The state shall not, in the opening statement, advert in any way to a confession or inculpatory statement made by the defendant."
The State argues in brief that the statements of the defendant to the victim's boyfriend were res gestae and, hence, not subject to the rules governing confessions and inculpatory statements.
In State v. Fink, 255 La. 385, 231 So.2d 360 (1970), where defendant moved for a mistrial because in the opening statement the district attorney referred to a conversation in which arrangements to purchase contraband were made without having given prior written notice as required by Louisiana Code of Criminal Procedure Article 768, the Court stated:
"In the conversation objected to, the officers made arrangements to purchase marijuana from the defendant. The out-of-court utterances were incident to the criminal conduct and formed part of the res gestae. As such, the conversation was admissible in evidence. LSA-R.S. 15:448; State v. Fernandez, 157 La. 149, 102 So. 186; State v. Terry, 128 La. 680, 55 So. 15; State v. Gessner, 44 La.Ann. 93, 10 So. 404."
"As used in Article 768, the term inculpatory statement refers to the out-of-court admission of incriminating facts made by a defendant after a crime has been committed. It relates to past events. See State v. Clark, 102 Mont. 432, 58 P.2d 276; 23 C.J.S. Criminal Law § 816, p. 151. Thus the article has no application to the conversation resulting in the sale of marijuana in the present case."
Later, this Court applied Fink to a factual situation in which the district attorney in his opening statement referred to a defendant's statement "Give me the knife," which statement defense counsel argued was a confession. Although the State had not given written notice of intent to use the confession prior to trial, we admitted the statement as part of the res gestae. State v. Crockett, 262 La. 197, 263 So.2d 6 (1972).
Similarly, Xavier Miles's statement is res gestae. Defendant made this statement at the scene of the crime a minute or two after the rape to the victim's boyfriend who discovered the defendant naked and the victim partially unclothed and hysterical. LSA-R.S. 15:447, 448; State v. Batiste, La., 318 So.2d 27 (1975); State v. Reese, 250 La. 151, 194 So.2d 729 (1967).
Assignment of Error No. 16 is without merit.

ASSIGNMENT OF ERROR NO. 17
The defendant asserts that the trial judge committed reversible error by overruling his hearsay objection to the following statements:
*739 EXAMINATION BY MR. McKAY: [District Attorney]
"Q. While you were in the room, Mr. Ross, did you noticedid you have a chance to notice anything on the floor or anything out of the ordinary in the room when you went in where the defendant, Xavier Miles, was standing with no clothes on?
"A. Well, I noticed the pants on the floor. They had a knife on the floor also. She had told me about the handcuffs and during the time we was waiting for the officers . . .
BY MR. ZIBILICH:
"Object to what she told him, if your honor pleases.
BY THE COURT:
"When did she tell you whatever this was?
"A. When she came back from calling the officers, calling the police. She was explaining things to me then.
BY THE COURT:
"Objection overruled.
MR. ZIBILICH:
"Note an assignment of error."
Defense counsel correctly contends that this testimony is hearsay and should have been excluded. LSA-R.S. 15:434. However, we do not believe that the defendant was prejudiced by its admission for this testimony tended to corroborate the victim's testimony about the handcuffs. LSA-C.Cr.P. art. 921.
In State v. Smith, La., 285 So.2d 240 (1973), we stated:
"With respect to Bill No. 8 we agree that the victim's act in picking our defendant's photograph was essentially assertive in nature, and thus the officer's testimony to this effect hearsay. However, we find this cumulative testimony not substantially prejudiced in view of the fact that the victim had already testified to the very occurrence, namely that he had picked defendant's photograph out of several shown him by Officer Furst."
Assignment of Error No. 17 is without merit.

ASSIGNMENT OF ERROR NOS. 19 and 20
In these two assignments of error defendant complains that the trial court erroneously allowed the introduction of two pieces of tangible evidence, a blouse worn by the victim at the time of the rape and a medical lab technician's report relative to the result of the tests performed by the examining physician. The defendant argues that the State failed to lay an adequate foundation for the introduction of the evidence.
The defendant argues that the foundation for the introduction of the blouse is inadequate because witness Ross, the victim's boyfriend, when viewing the blouse at trial, stated that he did not think that the victim was wearing that blouse when she opened the door for him. However, the victim identified the blouse as her own. Therefore, there was adequate connexity to warrant the introduction of the blouse.
In Assignment of Error No. 20, the defendant complains that because the doctor took the swab and smear from which the medical technician's tests and report were based, there was insufficient connexity to allow the introduction of the evidence. He points out that the technician was not present when the doctor took the swab and smear from the victim.
The State correctly argues that it is only necessary that it is more probable than not that the evidence is connected with the case and that the lack of positive identification goes to the weight to be given the evidence by the jury. State v. Dotson, 260 La. 471, 256 So.2d 594 (1971).
It is within the discretion of the trial judge to determine whether there is sufficient connexity to introduce evidence. In the absence of an abuse of discretion, his determination will not be disturbed.
Assignment of Error Nos. 19 and 20 are without merit.
As we have heretofore indicated, the United States Supreme Court invalidated *740 the Louisiana death penalty in Roberts v. Louisiana, supra, and Selman v. Louisiana, supra. The death penalty, therefore, can no longer be imposed. This Court has considered the matter and has concluded that the only sentence that can be imposed, in light of the invalidity of the death sentence, is the maximum sentence for simple rape, that is, confinement for twenty years at hard labor. See State v. Lee, La., 340 So.2d 180 (1976); State v. Craig, La., 340 So.2d 191 (1976).[2]
For the reasons assigned, the conviction is affirmed, but his sentence is set aside and his case is remanded to the district court for resentencing consistent with the views herein expressed to imprisonment at hard labor for a term of twenty years.
TATE, J., assigns concurring reasons.
DIXON, J., dissents.
CALOGERO, J., dissents, believing there is merit in assignment of error No. 16.
DENNIS, J., concurs.
TATE, Justice (concurring).
With regard to the majority's disposition of Assignment of Error No. 15, I concur in the result only.
The issue there posed is: Did the trial court erroneously excuse, upon the state's challenge for cause, a juror with merely scruples against the infliction of capital punishment, who did not make it clear that he would automatically vote against the imposition of capital punishment. The defendant correctly argues that the prosecutor is not entitled to a challenge for cause on such ground. See La.C.Cr.P. art. 798 (as amended in 1968).
The majority does not review the merits of this objection, pointing out that no death penalty is actually imposed here.
We are in error, if we hold that we will not review the erroneous exclusion, upon the state's challenge for cause, of a juror in a death case because no death penalty is actually imposed. If, upon the state's challenge for cause, the trial court excludes from a capital case all prospective jurors with merely scruples against the death penalty (but who might nevertheless vote to impose it should the evidence so warrant), the state is permitted to exclude prospective jurors for "cause" in violation of our state law. La.C.Cr.P. art. 798(2) (1968). To do so, also allows the prosecution more peremptory challenges than it is authorized by law. See La.C.Cr.P. art. 800.
The "Witherspoon -type" issue jurisprudence relied upon by the majority arose under different circumstances: The exclusion of jurors with conscientious scruples was there allowed by state law, but it nevertheless violated federal constitutional protections. Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Therefore, Witherspoon held, the federal constitutional invalidity of the jury or jury-selection invalidated only the death penalty, not the conviction itself.
In the present case, however, if the state's challenge for cause was erroneously sustained, the prosecution in violation of state law was permitted arbitrarily to excuse a juror from the jury, by way of an additional peremptory challenge (i.e., for non-recognized "cause"). Our state law expressly invalidates, as cause for excusing a juror, prosecution fears that he might have general scruples against imposition of the death penalty. La.C.Cr.P. art. 798(2) (1968). Our state law forbids the prosecution from so excluding jurors with merely scruples against the death penalty and thus attempting to assure a "hanging" jury. La.C. Cr.P. arts. 798(2) (1968) and 800. See State v. Alexander, La., 328 So.2d 144, 148 (1976) (concurring opinion).
Nevertheless, I am not at this time prepared to dissent, because I am not prepared to find erroneous, upon the showing made, the trial court's upholding of the state's *741 challenge for cause. The issue is close, however.
To repeat once again, simply because no death penalty is actually imposed, this court simply cannot ignore our own state procedural statutes in order to avoid review in capital cases of the possible erroneous exclusion by the state of prospective jurors in violation of La.C.Cr.P. art. 798(2). (Such potential prejudice is all the more apparent in the present case. The trial jury actually imposed the death penalty. If culled down to those jurors strongly favoring capital punishment, and excluded from it that cross-section of the population with scruples against its imposition, the defendant would have been deprived of a jury drawn from the entire community.)
Sensitive prosecutors and trial courts should not rely upon generalized statements that this court will never review the erroneous exclusion of jurors for "cause" in violation of La.C.Cr.P. art. 798(2). In context, these statements occur where isolated borderline violations, if any, have occurred. The majority opinions in these instances have not really addressed the issue raised by this concurring opinion. Squarely faced with it, I must believe that this court will not permit convictions to stand where jurors have been improperly excused in violation of La.C.Cr.P. art. 798(2).
NOTES
[1] Defendant neither briefs nor argues Assignments of Error Nos. 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 14, 18, and 21. These assignments of error therefore, are considered abandoned. State v. Richmond, La., 284 So.2d 317 (1973); State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972).
[2] The author of this opinion dissented in the cases cited, but is obliged to incorporate the majority view in this opinion for the Court.