WILLIAM A. CULPEPPER, Judge Pro Tem.
On November 7, 1984, defendant, Steven Domingue, was charged by grand jury indictment with aggravated rape in violation of La.R.S. 14:42. On July 17, 1986, a jury of twelve unanimously found defendant guilty as charged. Defendant waived sentencing delays and was immediately sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. . Defendant appeals his conviction, alleging five assignments of error.
On October 6, 1984, Crystal Langlinais and her friend, Janet Habetz, met an acquaintance, Andre Franques, at the Crowley Rice Festival in Crowley, Louisiana. Crystal and Andre arranged to meet later at 11:00 P.M. that same evening at the comer of North Parkerson and West Third Streets. At approximately 11:00 P.M., Crystal and Janet met Andre as previously arranged and the three began walking on West Third Street. While there were many thousands of people on North Parkerson attending the Rice Festival, there were very few people on West Third Street. The three, all of whom were minors, continued walking on West Third Street until they came to a parking lot. Crystal and Andre walked into the parking lot and stood near the corner of a building, which was adjacent to an alley, while Janet remained several feet away in the parking lot.
While Janet was waiting, she was approached by three black youths, one of whom she positively identified to be the defendant. Frightened, Janet ran to the comer where Andre and Crystal were, told them of the encounter, and asked them to leave. Crystal then told Janet that they would not be long and asked her to return to the parking lot so the couple could be alone. Andre then stood where he could keep Janet within his line of vision, and continued his conversation with Crystal. A few minutes later, Crystal saw over Andre’s shoulder three black youths approaching them from the inside of the alley, next to the building where the couple was standing. The three boys confronted the couple and Andre heard the clicking sound of the locking mechanism of a lock blade knife. One of the boys held a knife blade to Andre while one of the other youths beat him. Andre was then forced to face the wall of the building and kneel, while Crystal was beaten, dragged back into the alley and raped by each youth. The assailants then robbed Andre, grabbed Crystal’s purse and quickly disappeared down the alley. After helping the victim, Crystal, Andre left her with Janet on busy North Parkerson Street and sought the help of a nearby police officer, Raymond Lavergne. Officer Lav-ergne radioed Andre’s description of the attackers to police headquarters.
Police Officer Ronald Arceneaux, who was on patrol nearby, intercepted the radio transmission describing the attackers as three black males, two wearing hats. Officer Arceneaux turned his police unit left on West Third Street and encountered three white males, one of whom, when given the attackers’ description, stated that he had seen three young black males fitting the description walking north on Avenue E which intersects West Third Street. Officer Arceneaux, suspecting that the attackers might be heading for the residential area in West Crowley, drove to Avenue C where he saw three young black males, two wearing caps as described, walking south on or near the sidewalk in Duson park. Officer Arceneaux radioed that he had encountered the suspects, pulled his police unit over and requested that the three suspects come over, which they did. He noticed that all three young suspects were wearing caps but that one was wearing a black billess cap, which could have been mistaken for no hat at all, that two suspects were wearing maroon shirts and that they were all wearing blue jeans.
About the time the three suspects walked over to Officer Arceneaux, Officer *298 Ronald LaFosse and Lt. Ceasar arrived at the park. Lt. Ceaser asked Officer Arcen-eaux for a further description of the attackers regarding the hats they were wearing. Officer Lavergne relayed that two of the attackers were wearing baseball caps and that the attackers were all wearing blue jeans and that one was wearing a burgundy or maroon shirt. The three suspects were taken into custody and transported to the police station. One of the three suspects was the defendant, Steven Domingue. Shortly after the suspects were taken into custody police officers found Crystal’s purse and purse contents strewn in a trail-like manner near the area where the youths were stopped. Additionally, two lock-blade knives were found in the park within six feet of where the youths were walking when Officer Arcen-eaux drove past.
At the police station, defendant surrendered his clothing for analysis and completed a standard “rape kit.” Medical and forensic experts testified at trial that analysis revealed semen stains found on defendant’s underwear and that the stains could not have come from the defendant, and therefore, must have come from someone else. Additionally, two pubic hairs from defendant’s underwear were of Caucasian origin and were microscopically indistinguishable from the victim’s pubic hair. The victim also completed a standard rape kit. She had four foreign Negro pubic hairs in her pubic combings. Both the defendant and the victim had plant and algae material on their clothing, which material was both microscopically and macroscopically compatible with plant and algae material found at the scene of the crime. Woody material found on defendant’s clothing was microscopically consistent with particle board found at the crime scene. A tuft of purple fibers was found on the vaginal swab taken from the victim during her examination. The fibers were macroscopically and microscopically identical to reference fibers taken from defendant’s shirt and microscopically identical to fibers tape-lifted from the victim’s blouse. “Up-sum” board, which experts testified is no longer manufactured and which consisted of a cardboard-like material with a grey paint coating, was found at the crime scene. Forensic tests revealed that the paint and material were indistinguishable from paint flecks with fiber backing found on the clothing of both the defendant and the victim. One forensic expert testified that the physical evidence, discussed above, was the strongest of any case he had worked on in three years at the Acadiana Crime Lab.
ASSIGNMENT OF ERROR NUMBER 1
Defendant assigns as his first error the trial court’s denial of his motion to suppress. Defendant’s argument on appeal is that his initial arrest was illegal as it was without probable cause and, therefore, any evidence seized as a result of the illegal arrest constitutes “fruits of the poisonous tree.” Additionally, defendant contends that he surrendered his clothing to police officers only after police officers told him that if he did not surrender his clothing he could not go home and that, therefore, the procurement of his clothing by the officers was both coerced and involuntary.
La.C.Cr.P. art. 213 provides that:
“A peace officer may, without a warrant, arrest a person when: ... (3) the peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer, ...”
Thus, for a warrantless arrest to be lawful, it must be based on probable cause. State v. Raheem, 464 So.2d 293 (La.1985). Probable cause to arrest exists when facts and circumstances known to the arresting officer and of which he had reasonably trustworthy information are sufficient to justify a man of ordinary caution into believing the person to be arrested has committed a crime. State v. Raheem, supra; State v. Wilson, 467 So.2d 503 (La.1985), cert den., — U.S. -, 106 S.Ct. 281, 88 L.Ed.2d 246 (1985). Probable cause to arrest must be judged by probability and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. *299 State v. Raheem, supra; State v. Stewart, 465 So.2d 206 (La.App. 3 Cir.1985), writ den., 468 So.2d 571 (La.1985). Probable cSuse to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer’s knowledge in light of the experience of reasonable people, not legal technicians. State v. Billiot, 370 So.2d 539 (La.1979), U.S. cert. den., 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979). While mere suspicion is insufficient to justify an arrest, a police officer need not have sufficient proof to convict in order to arrest. State v. Randolph, 337 So.2d 498 (La.1976).
In the instant case police officers, prior to defendant's arrest, knew within a matter of minutes that a rape had occurred at shortly after 11:00 P.M. approximately three and one-half blocks from where the defendant and his friends were stopped, and the officers had been given a description of the attackers as three black males wearing blue jeans, 2 wearing baseball caps and one wearing a maroon or burgundy shirt. Officer Arceneaux was told of three blacks, two wearing hats, being seen walking north on Avenue E, approximately half way between the crime scene and Du-son Park. Heading west, where experience told him that the attackers might be fleeing, he discovered three black males, one of whom was the defendant, fitting the description given walking on or near the sidewalk in Duson Park. Under these circumstances, the arresting officers were correct in believing, more probably than not, the three suspects had committed an unlawful act. The officers were, therefore, not without probable cause in arresting defendant.
Officer Charles Eaglin testified at the motion to suppress that when the defendant, who was sixteen years old at the time of the offense, arrived at the police station, he noticed blood stains on the crotch area of his jeans. Police Captain Gilford Richard testified that he noticed a white flaky material on the defendant’s clothing which he believed came from plyboard found at the crime scene. Defendant was asked to call his mother to bring him a change of clothes, and when she arrived, his clothing was removed and taken into police custody.
Although a personal inventory search at the time of booking an arrested person is a recognized exception to the search warrant requirement, police may not seize any item that they choose; the seized item must be contraband, an instrumentality of the crime, a fruit of the crime, or evidence of the crime. State v. Wilson, supra. State v. Elliot, 407 So.2d 659 (La.1981). In the case of seizure of evidence of a crime, probable cause must be examined to determine whether the seizure of evidence would reasonably aid in apprehension or conviction. State v. Wilson, supra. In Wilson, detectives reasonably concluded that a defendant’s bloodstained clothing would inevitably aid in the conviction of a murderer. Likewise, in the instant case, police officers were reasonable in seizing defendant’s clothing where they reasonably believed that the blood stain and the white flaky material similar to a substance found at the crime scene on defendant’s clothing were evidence of criminal activity. The retention of defendant’s clothing without warrant was therefore lawful and based on probable cause regardless of whether defendant voluntarily gave his clothing to law enforcement officers.
ASSIGNMENT OF ERROR NUMBER 2
Defendant contends, in his second assignment of error, that the trial court erred in allowing the State to introduce into evidence, without proper foundation, the two lock blade knives found on the night of the crime in Duson Park near where the defendant was arrested. Defendant claims there was no nexus shown by the State linking the knives to the defendant. Defendant contends that since Officer Arcen-eaux testified that he did not see defendant discard the knives and there was no other link between the defendant and the knives, introduction of the knives into evidence was improper, of little or no probative value, highly prejudicial and constituted reversible error.
At trial, the State introduced testimony from Officer Arceneaux and Andre Fran- *300 ques regarding the knives in question. Officer Arceneaux testified that he found the first knife, an Old Timer lock blade, about one foot from the sidewalk on which the defendant had been walking. A second knife, a Schrade case lock blade, was found within six feet of the first knife by Captain Eaglin. Interestingly, the knives were found either behind or near a large oak tree which was located between the suspects and Officer Arceneaux and which could have concealed the suspects and their attempt to dispose of the knives. Andre Franques testified that the knives the assailants used on him were lock blade knives and appeared to be the same knives as those shown in court. At this time, over defense counsel’s objection, the State moved to introduce the knives into evidence. The trial judge sustained the objection, stating that the defendant had not been sufficiently linked to the crime so as to allow the knives into evidence. Later, expert witness, Christopher Henderson, testified regarding forensic analysis he performed on plant materials, wood and cloth fibers, and paint found on the defendant, the victim and at the scene of the rape. Based on his scientific analysis, Mr. Henderson positively concluded that the defendant had been at the scene of the crime. At this point, the trial judge allowed the knives to be introduced into evidence.
Defendant argues that because the State did not prove the knives belonged to defendant, they were inadmissible.
La. C.Cr.P. art. 773 provides:
“Neither the state nor the defendant can be controlled by the court as to the order in which evidence shall be adduced; but when the evidence requires a foundation for its admission, the foundation must be laid before the evidence is admissible.” (Emphasis added.)
Admission of physical evidence requires that the foundation be laid, either by positive identification by a witness or through establishment of a chain of custody. State v. Overton, 337 So.2d 1201 (La.1976); State v. Guillory, 438 So.2d 1256 (La.App. 3 Cir.1983). The foundation for admitting demonstrative evidence need only establish connexity by a preponderance of the evidence; it is sufficient that it is more probable than not that the object is connected with the case. State v. Jackson, 309 So.2d 318 (La.1975).
It is within the trial judge’s discretion to determine whether there is sufficient con-nexity to introduce evidence. In absence of an abuse of discretion, his determination will not be disturbed. State v. Miles, 339 So.2d 735 (La.1976).
In this instance there was ample evidence to prove that it was more probable than not that the knives introduced into evidence were used in the crime. The arresting officer found the knives within one to six feet of where he initially spotted the suspects. Andre Franques witnessed the attack on the victim and was robbed by the attackers. He was knowledgeable about knives and identified the knives as appearing to be the same ones used in the crime. Additionally, an expert forensic scientist positively concluded that defendant had been at the scene of the crime based on his analysis of numerous identical items recovered from the defendant, the victim and from the scene of the crime. Other items belonging to the victim were found strewn in a trail-like manner near the area where the defendant was arrested. Under these circumstances we conclude that it was more probable than not that the two knives found in the near vicinity of where the defendant was arrested were connected with the case. Accordingly, the trial judge did not abuse his discretion in allowing the knives to be admitted into evidence, and this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 3
Defendant contends that the State intentionally withheld exculpatory evidence that is required to be given under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and thus committed reversible error. Initially, defendant claims that the State intentionally failed to inform him of an inconsistent statement made by Andre Franques, the boy who accompanied the rape victim on the evening of the crime. Defendant argues that this inconsistent *301 statement was usable for impeachment purposes. Additionally, defendant claims the State failed to inform defense counsel of a statement defendant made to Captain Richard when he was initially arrested. This statement was not introduced into evidence, nor even referred to at the trial. Defendant contends the statement can be presumed to be exculpatory since the State failed to use the statement against defendant at trial.
At the trial of co-perpetrator, Gregory Brown, the State’s witness, Andre Fran-ques, testified as follows:
“Q. Did the police officers ask you how it happened or what happened?
A. Yes, sir.
Q. And what did you tell them?
A. I gave them a description of the guys that had raped her, and then I told her — told them what had all happened. How it started and what happened.
Q. There was testimony to the effect that you mentioned something to one (1) of the police officers about having to go into an alley to the bathroom?
A. Yes, sir.
Q. What is that about?
A. Well, I used that excuse because I — I was kind of embarassed of the fact that I wanted to be alone with Crystal so we could talk.
Q. Okay.”
Additionally, during the motion to suppress hearing in the Gregory Brown case, Captain Richard testified as follows:
“Q. Did you interrogate Stephen Do-mingue?
A. Yes, sir.
Q. Did he give you a statement?
A. If I remember he gave me one orally-
Q. He gave you one orally? You got If you call it a statement.
Q. What?
A. Some words were exchanged.
Q. Did you give that statement to the D.A.?
I don’t think I did, because it wasn’t written down. The only thing I gave to the D.A. was written material. A.
Q. You got a written statement from him? You got an oral confession?
A. No oral confession.”
On defendant’s motion, the trial court reviewed the State’s file in an in-camera proceeding and found it to contain no exculpatory evidence.
Suppression by the prosecution of evidence favorable to an accused upon request violates due process where evidence is material to guilt or to punishment irrespective of good faith or bad faith of the prosecution. Brady v. Maryland, supra; State v. Perkins, 423 So.2d 1103 (La.1982). The rule requires disclosure of evidence which impeaches the testimony of a witness, where the guilt or innocence of a defendant may be determinable based on the witness’ reliability or credibility. Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972); State v. Cobb, 419 So.2d 1237 (La.1982). Ultimately, the question is whether the failure to disclose the evidence is of sufficient significance so as to result in denial of a defendant’s right to a fair trial. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). The test of whether the undisclosed evidence is material, so that depriving a defendant of the evidence constitutes a constitutional violation, depends on the type of request for exculpatory evidence made. Where a defendant makes a request for specific exculpatory evidence, the standard of materiality is whether the undisclosed evidence might have affected the jury’s verdict. Giglio v. U.S., supra; State v. Ates, 418 So.2d 1326 (La.1982). However, where a defendant makes only a general request for “all Brady material” or no request at all, the standard of materiality is whether the undisclosed evidence creates a reasonable doubt that did not otherwise exist. United States v. Agurs, supra; State v. Johnson, 464 So.2d 1363 (La.1985), on remand, 486 So.2d 787 (La.App. 1 Cir.1986).
In the instant case, the defendant made a general request for all exculpatory *302 material. The court, after an in-camera inspection of the State’s record, found no exculpatory evidence in the State’s file. While Andre Franques gave police a different reason for being in the alley on the night of the crime, this does not constitute a violation of the State’s duty to notify a defendant of possible exculpatory material, nor does it constitute a violation of defendant’s right to a fair trial. The witness’ initially stated reasons for being in the alley do not cast a reasonable doubt on his credibility as a witness. Moreover, most of Andre Franques’ testimony was corroborated by the testimony of Janet Habetz and the victim. We therefore conclude that failure of the State to disclose any initial statement made by Andre Franques as to his reasons for going into the alley on the night of the crime would not have raised a reasonable doubt on defendant’s guilt.
Although Captain Richard stated that the defendant gave an oral response to police questions, we are likewise unimpressed by defendant’s argument that the response can be presumed exculpatory and in violation of Brady requirements. No oral statement made by defendant in response to police questions was introduced at trial, and the State is not obligated under our discovery articles to disclose such a statement. LSA-C.Cr.P. art. 716. Defendant cites no authority for his contention that any response to police questioning which is not a confession is presumed exculpatory, nor has defendant shown or even contended that such a statement is material so as to cast reasonable doubt on defendant’s guilt. The State’s failure to provide the defendant with this statement has not been shown to violate defendant’s right to a fair trial. Accordingly, we find this assignment of error to be without merit.
ASSIGNMENT OF ERROR NUMBER 4
Defendant assigns as error number 4 the trial court’s permitting evidence concerning the rape kit of Gregory Brown to be introduced into evidence as being of little or no probative value and highly prejudicial to his case. During trial the State attempted to introduce into evidence the “rape kit” of Gregory Brown. The trial court sustained defendant’s objection to the admissibility of Brown’s rape kit in that the State had failed to show that he was one of the youths arrested along with the defendant on the night of the rape. Later, the trial court allowed introduction into evidence of Brown’s rape kit, after it was told that Captain Richard had identified Brown as one of the youths arrested with defendant. In fact, the record reflects that Officer Richard identified only the defendant as one of the youths arrested on the night of the rape.
La.R.S. 14:42 defines aggravated rape as follows:
“A. Agravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
(4) When the victim is under the age of twelve years. Lack of knowledge of the victim’s age shall not be a defense.
(5) When two or more offenders participated in the act.
B. For purposes of Paragraph (5), “participate” shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act.”
By introducing into evidence Brown’s rape kit, the State was attempting to satisfy Section A(5) of the statute by proving that two or more persons had participated in the act.
La.C.Cr.P. art. 773 provides that evidence which requires a foundation for its admission must have that foundation laid *303 before the evidence is admissible. In order for evidence establishing Brown as a co-perpetrator with the defendant to be admitted, a proper foundation must have been laid before that evidence can be admitted into evidence. The State’s inadvertent failure to have a witness identify Brown as a co-perpetrator with defendant in the rape of the victim constitutes an improper foundation for the admissibility of Brown’s rape kit.
Forensic expert’s testimony that semen stains found on the clothing of both the defendant and the victim could have belonged to Brown might have influenced the jury. However, other evidence introduced at trial showed that the victim was raped by two or more persons. The victim testified that all three black males raped her. Moreover, there is sufficient evidence from which the jury could find that the defendant committed aggravated rape on the victim under Sections A(2) and A(3) of the aggravated rape statute. The victim testified that as one of the attackers held Andre Franques at knife point the other two attackers threatened to kill her and raped her. Andre Franques also testified that immediately prior to the rape the defendant hit him and threatened him with a knife. The victim testified that one of the attackers beat her prior to raping her. Since there is sufficient evidence from which the jury could convict the defendant under paragraphs two and three of the statute, any error regarding the introduction of Brown’s rape kit did not sufficiently affect the substantial rights of the defendant to require reversal. LSA-C.Cr.P. art. 921. Accordingly, this assignment of error is without merit.
ASSIGNMENT OF ERROR NUMBER 5
As his last assignment of error, defendant contends that his conviction was based on circumstantial evidence which failed to exclude every reasonable hypothesis of innocence. Defendant contends that the scientific evidence introduced at trial proved only that the defendant could not be excluded as a potential perpetrator.
The constitutional standard for testing the sufficiency of evidence is set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The test is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. Id; State v. Honeycutt, 438 So.2d 1303 (La.App. 3 Cir.1983), writ den., 443 So.2d 585 (La.1983). La.R.S. 15:438 requires that when circumstantial evidence is used to prove the commission of the offense, assuming every fact to be proved that the evidence tends to prove, in order to convict, the evidence must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Lilly, 468 So.2d 1154 (La.1985). Ultimately, due process requires that all evidence, both direct and circumstantial, must be sufficient to satisfy a rational jury that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985).
In this case the State presented overwhelming evidence, discussed in detail above, showing that the defendant committed aggravated rape. Scientific evidence conclusively placed the defendant at the scene of the crime. Testimonial evidence by the victim and Andre Franques showed that the physical description of one of the perpetrators closely matched that of the defendant, who was found approximately three blocks from the crime scene, and that the defendant was one of three black males who raped the victim under threats of death or serious bodily harm with the use of knives. Items found near where the defendant was stopped and arrested corroborated the testimony of the victim and Andre Franques and further exclude any other reasonable hypothesis. Defendant could have been found guilty, based on the facts as set forth during trial, of aggravated rape based on Sections A(2), A(3), or A(5) of La.R.S. 14:42. Any rational trier of fact could have found all the essential elements of the crime proved beyond a reasonable doubt.
*304 Por the reasons set forth above, the defendant’s conviction and sentence are affirmed.
AFFIRMED.