425 So.2d 740 (1983)
STATE of Louisiana
v.
Paul Mark ARCENEAUX.
No. 82-K-1543.
Supreme Court of Louisiana.
January 10, 1983.
*741 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard Knapp, Dist. Atty., Eugene Bouquet, Asst. Dist. Atty., for respondent.
Steven Broussard, Lake Charles, for relator.
MARCUS, Justice.
Paul Mark Arceneaux was charged by bill of information with simple burglary in violation of La.R.S. 14:62 and theft of property[1] in excess of $500 in violation of La.R.S. 14:67. Prior to trial, defendant filed a motion to suppress certain physical evidence and inculpatory statements on the ground that they were unconstitutionally obtained. After a hearing,[2] the trial judge denied the motion. Upon defendant's application, we granted a writ under our supervisory jurisdiction to review the correctness of that ruling.[3]
Defendant contends the trial judge erred in denying the motion to suppress his inculpatory statements. He argues that there was no probable cause for his arrest; therefore, the arrest was illegal and the statements obtained from him as a result thereof *742 were inadmissible as "fruit of the poisonous tree." In addition, he argues that the second statement (confession) was taken in violation of his sixth amendment right to counsel.
The facts adduced at the suppression hearing[4] are generally not in dispute. At about 5:30 a.m. on February 8, 1982, Officer Miles of the Sulphur Police Department was on routine patrol. While driving east on Highway 90, he saw a parked vehicle on the north side of the railroad tracks with its headlights on. The vehicle was on a one-way dirt path[5] which ran parallel to the railroad tracks. Miles, aware of complaints of criminal damage to property, trespassers, and people throwing rocks at trains in the area, turned around and drove north onto the property of a concrete plant, which was located south of the railroad tracks. He pulled up behind a rock pile and shined his spotlight on the vehicle, whereupon the vehicle, which had two people in it, started to back up. Knowing that the only public access to the path was Prater Road, Miles radioed Officer Decker to head off the vehicle. Decker responded and proceeded along the "path" with his spotlight on. Decker testified that he saw "... the doors were open on the vehicle ... two subjects were getting into the vehicle, and the doors closed, and the vehicle started backing out towards me...." When the vehicles got within thirty feet of each other, Decker got out of his vehicle and ordered the driver (Arceneaux) to stop the car. At this time, Miles arrived on the scene and the officers began identification procedures on Arceneaux and the passenger (Raymond A. Walker).[6] When Decker noticed a train coming, all parties drove to a nearby parking lot at the Red Top Grocery. There, Lieutenant Moss and two units from the Calcasieu Parish Sheriff's Department arrived. Arceneaux was once again requested to produce identification. Although Arceneaux was not "formally" arrested at this time, Miles testified that he would have restrained him if he had tried to leave. Five or ten minutes later, Miles and Moss left the parking lot to search the area near the railroad tracks. Upon finding an electric guitar in a water-filled ditch or hole,[7] they radioed Decker to arrest Arceneaux. Decker formally arrested defendant for trespassing on Southern Pacific Railroad property,[8] advised him of his Miranda rights and transported him to the Sulphur Police Department where he was booked on the charge of trespass. At 6:50 a.m., defendant, after being advised of his Miranda rights by Officer Doucet, signed a waiver of rights form. At 7:02 a.m., Officer McCann of the Sulphur Police Department took over and again advised defendant of his rights. McCann asked Arceneaux: "[W]here did the items recovered come from?" Defendant replied that they "had come from the mini-warehouse." McCann intended to ask more questions but at that point defendant stated that he wanted to "talk to an attorney first." Defendant's request for an attorney is not disputed. Questioning then ceased. Subsequently, defendant was taken across the street to the Sulphur substation. Meanwhile, Officer Steach, a burglary and theft investigator with the Calcasieu Sheriff's Office, had been called to assist in the case by the Sulphur Police Department. Steach, after investigating the area near *743 the railroad tracks, arrived at the sub-station at about 10:30 a.m. Thereafter, at about 11:30 a.m. (some four hours after Arceneaux had requested counsel), Steach, unaware of defendant's request for counsel, proceeded to interrogate him about the break-in after advising him of his Miranda rights and having him execute a waiver of rights form. Defendant orally confessed to his involvement in the crime. However, defendant refused to give a written statement stating that "he wanted to talk with an attorney." Questioning then ceased and defendant was placed under arrest for burglary and theft.
In order to ascertain the admissibility of these inculpatory statements, we must first determine whether defendant's arrest was based upon probable cause to believe that he had committed a crime.
La.Code Crim.P. art. 213 provides in pertinent part:
A peace officer may, without a warrant, arrest a person when:
....
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer....
Reasonable cause, which we have treated under this article as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); State v. Drew, 360 So.2d 500 (La.1978). Probable cause may be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Drew, supra. Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Drew, supra.
In the instant case, Officer Miles was on routine patrol when he saw a parked vehicle with its headlights on. The car was on a path that extended from a public road (Prater Road). There were no barricades, fences, or posted signs to put the defendant on notice that he should not enter the area. There was no testimony that Arceneaux knew that he was trespassing. In fact, defendant's only response to questioning before he was arrested was that he was just checking to see where the road went. Officer Decker only saw the two subjects get into the car and back up. Moreover, when Miles found the guitar in the ditch, there was no evidence at the time of the arrest of any relationship between the guitar and Arceneaux. No one saw Arceneaux unload the items from the car to the ditch. Although the officers were aware of previous complaints of theft, vandalism, and trespassing in the area, the officers did not have probable cause to believe that the defendant had committed any crime. Hence, defendant's arrest was illegal.
Confessions obtained through custodial interrogations after an illegal arrest should be excluded unless intervening events break the causal connection between the illegal arrest and the confession so that the confession is "sufficiently an act of free will to purge the primary taint." Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In Brown, the United States Supreme Court identified several factors that should be considered in determining whether a confession has been purged of the taint of the illegal arrest: "the temporal proximity of the arrest and the confession, the presence of intervening circumstances,... and, particularly, the purpose and flagrancy of the official misconduct." Brown, supra, 422 U.S. at 603-604, 95 S.Ct. at 2261-2262. The state bears the burden of proving that a confession is admissible. Ibid.
Defendant's statement to Officer McCann that the items recovered had come *744 from the mini-warehouse was made less than two hours after he had been arrested. There were no intervening events of any significance. Moreover, defendant was arrested without probable cause in the "hope that something might turn up." Taylor v. Alabama, ___U.S.___, 102 S.Ct. 2664, 73 L.Ed.2d 314 (1982); Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, supra. Clearly, the causal connection between the unlawful conduct and the statement did not become so attenuated as to dissipate the taint of the primary illegality. Hence, the state failed to sustain its burden of proving the statement admissible.
Defendant's second statement admitting his involvement in the burglary and theft to Officer Steach at about 11:30 a.m. (some four hours later) likewise may not have been so attenuated as to dissipate the taint of the illegal arrest; however, we pretermit this question finding the confession inadmissible on another ground.
In Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation unless the accused is first advised of, and subsequently waives, his right to remain silent and right to the presence of an attorney. In Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378, decided on May 18, 1981, the Supreme Court held that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. The Court further held that an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police. State v. Shea, 421 So.2d 200 (La.1982) (on rehearing); State v. McCarty, 421 So.2d 213 (La. 1982).
Since the confession in the instant case was obtained after Edwards, the new rule of Edwards is applicable.[9] It is uncontroverted that Arceneaux invoked his right to counsel while being interrogated by Officer McCann at about 7:15 a.m. Counsel was never made available to him nor did defendant initiate further communication with the police. To the contrary, the police (Officer Steach) reinitiated further conversation with Arceneaux. Moreover, it is of no moment that Steach did not know of defendant's request for counsel. Good faith is not relevant because once the defendant has expressed his desire to deal with the police only through counsel, all successive officers who deal with the defendant are held to have knowledge of this fact. State v. West, 408 So.2d 1114 (La.1981). Hence, the second statement (confession) made to Officer Steach is inadmissible.
In sum, the trial judge erred in denying defendant's motion to suppress the inculpatory statements made by him to Officers McCann and Steach. We must reverse.

DECREE
For the reasons assigned, the ruling of the trial judge denying defendant's motion to suppress is reversed and set aside. The case is remanded to the district court for further proceedings.
NOTES
[1] The property consisted of a turntable and stereo, an electric guitar, a television, three albums and assorted equipment.
[2] It was stipulated at the hearing that since the physical evidence was abandoned prior to defendant's stop by the police, there was no constitutional violation in the seizure of the evidence.
[3] 416 So.2d 938 (La.1982).
[4] It was stipulated that if Deputy Steach were called as a witness to testify, his testimony would be substantially the same as that previously given at the preliminary examination with reservation of the right to each party to call the witness for additional questions. Ultimately, he was called to testify at the hearing.
[5] The path, located in the City of Sulphur, Calcasieu Parish, was part of a railroad right-of-way owned by Southern Pacific Railroad.
[6] The motion to suppress concerns only Arceneaux.
[7] Officers Miles and Moss also found another guitar, a portable television, stereo equipment and automobile equipment in the ditch.
[8] It is not clear whether defendant was arrested under Section 10-43 (criminal trespass) of the Code of Ordinances of the City of Sulphur or La.R.S. 14:63 (criminal trespass). This charge was later rejected by the district attorney's office.
[9] See State v. Shea, 421 So.2d 200 (La.1982), as to the non-retroactivity of Edwards.