447 So.2d 1159 (1984)
STATE of Louisiana,
v.
Ruby A. PALMER and Gordon L. Bradford, Defendants-Appellants.
No. CR83-467.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1984.
*1161 Robert Godwin, Bertrand DeBlanc, Sr., J.M. Wooderson, Lafayette, for defendant-appellant.
J. Nathan Stansbury, Dist. Atty. and Carrol Spell, Jr., Asst. Dist. Atty., Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and STOKER, JJ.
DOMENGEAUX, Judge.
Co-defendants Gordon L. Bradford and Ruby Ann Palmer were charged by bill of information on February 10, 1982, with attempted first degree murder of Paul Moores, in violation of La.R.S. 14:27 and *1162 30; and by amended bill of information on March 1, 1982, with attempted armed robbery of Paul Moores, in violation of La.R.S. 14:27 and 64.
Trial was commenced before a twelve member jury on September 13, 1982. On September 17, 1982, the jury returned a guilty verdict of attempted armed robbery as to both defendants. Additionally, it returned a responsive verdict to the charge of attempted first degree murder and found Gordon L. Bradford guilty of attempted manslaughter. Further, it returned a verdict of not guilty to the charge of attempted first degree murder as to Ruby Palmer. Motions for a new trial were denied.
After delays for sentencing expired the trial judge sentenced defendant Palmer to six (6) years at hard labor with the Department of Corrections without benefit of parole, probation, or suspension of sentence, and sentenced defendant Bradford to ten and one-half (10½) years imprisonment at hard labor on the attempted manslaughter conviction to run concurrent with a sentence of forty-nine and one-half (49½) years at hard labor, without benefit of parole, probation, or suspension of sentence on the attempted armed robbery conviction. Both defendants appealed their convictions and sentences.
Defendant Bradford appeals his convictions and sentences alleging thirty-one (31) assignments of error, ten of which are briefed for the Court.[1] Defendant Palmer appeals her conviction and sentence alleging three (3) assignments of error, all of which are briefed for the Court.

FACTS
During the early morning hours of February 5, 1982, Paul Moores left the Southern Spirits Lounge to go to his room at the Acadian Motel in Lafayette, Louisiana. Mr. Moores had been drinking at the lounge from about 9 P.M. to about Midnight and had bought several rounds of drinks for a girl named Janet and some people sitting with her at the bar. Mr. Moores had $760.00 on his person at that time, most of which he left with the bartender who put it in a safe.
The defendants Palmer and Bradford were also drinking at the Southern Spirits Lounge that night. They, along with other companions, observed the victim and the large amount of money he possessed.
Mr. Moores left the lounge at Midnight with a man known as "Tree" later identified as Gary Platt. Mr. Moores had offered to share his hotel room with "Tree". Mr. Moores and Tree were accompanied by two women named Peggy Domingues and Francine Cole.
Shortly after the four arrived at Mr. Moores' room, there was a knock at his door. Tree opened the door and the defendants Palmer and Bradford along with one other male entered the room. Defendant Bradford struck Mr. Moores across the mouth with a pool cue and demanded his money. Moores told him he had left the money with the owner of the lounge for safekeeping. Apparently the defendants and their cohorts did not believe the victim, because the victim was knocked down to the floor, and held there by Tree and someone called "Animal." The defendants and the others then began beating and kicking the victim in an effort to force him to surrender his money to them. The victim was kicked repeatedly with steel toe boots, burned with a cigarette lighter and beaten with a cue stick as well as hit constantly with defendants' fists. The victim specifically recalled defendant Bradford kicking him and defendant Palmer burning him with a "Bic"type cigarette lighter.
As the defendants and the other assailants beat and tortured the victim, they repeatedly demanded his money. This went on for a period of about three hours (from 1:00 A.M. until approximately 4:30 A.M.). Moores was stripped naked and tied *1163 to the bed with his own clothes. During this three-hour period one of the two girls that had come to the room with Moores from the lounge removed her clothes. She then attempted to force the victim to perform an unnatural sexual act. Following this the victim was again beaten. The victim then had an uncontrollable bowel movement and was untied and allowed to clean himself somewhat. Seeing this as his chance to escape, the victim made a rush for the window but was stopped. The attackers again tied the victim and began to beat him once more.
At this point the assailants went outside to the balcony to discuss the victim's fate. The victim overheard defendants Palmer and Bradford and the others say that after they got the money they would kill him because Moores could identify them; and further, that the patrons of the Southern Spirits Lounge knew who they were and saw the victim in their company.
When the defendants and the others came back into the room they decided to force the victim to phone the owner of the lounge; then they would take the victim to the lounge to get the money. Defendant Palmer told defendant Bradford that she would get a gun, which she then gave to Bradford. With the victim at gunpoint, Bradford went down to a laundromat and phoned the owner of the lounge. However, they were unable to reach this person because the lounge had already closed. The victim refused to go anywhere else. Bradford decided to abandon the plans to obtain the money; he and others left the victim at a convenience store.
Police officers Jackie Phelps and Mike Lavergne along with Sgt. Venable were dispatched to the 7-11 store where the victim had been left. Officer Ken Holleman was called to investigate a possible beating and robbery at 701½ Cedar Crest Court. There he met two young women who said that they had witnessed a beating. After confirming that the man at the 7-11 might be the same one described by the two women, Officer Holleman proceeded to the 7-11 store to question the victim. Upon arrival Officer Holleman observed the victim covered with blood and seriously injured. The victim was unable at this point to give Officer Holleman a description of the suspects. However, the Officer was able to determine that the beating had taken place at Room 92 of the Acadian Motel.
When Officer Holleman went to Room 92 there was no one there but he observed that the room was very disarrayed and there was quite a bit of blood soaked into the carpet, on the chairs and the bed.
Subsequently, Officer Holleman went to the hospital to question the victim. The victim gave the officer a description of his assailants. Prior to going to the hospital the officer had obtained a description of the suspects from the two female witnesses. He found the suspects in a room at the Acadian Motel. There were six people in the room and two of them, Palmer and Bradford, matched the description given Officer Holleman.
The suspects were then taken to police headquarters for questioning. Officers observed what appeared to be blood stains on both suspects' shoes and clothing. Bradford and Palmer were then placed under arrest.
Defendants were later tried, found guilty, and sentenced as hereinabove stated. Both defendants have appealed their sentences and convictions alleging the following assignments of error:
ASSIGNMENT OF ERROR NO. 1 (BRADFORD)
The defendant argues by this assignment that the trial court erred in permitting the State to obtain blood and hair samples from the defendant. Bradford asserts that this intrusion into his body was a direct violation of his rights as guaranteed by the Fourth and Fifth Amendments of the United States Constitution. He maintains that the State had not laid sufficient grounds to justify the compulsory taking of these samples.
The record indicates that the State did make an effort to justify the needs for *1164 these samples. Through the testimony of Detective Dale Broussard, the District Attorney made it clear that these samples were necessary for comparative purposes. The defendant's boots, clothes, and the pool cue had hair and what appeared to be human blood stains on them. Since the victim sustained a brutal beating a proper foundation had been laid to require these samples for testing in order to discern the origin of the hair and blood. The record does not support defendant's claim.
There exists a line of jurisprudence which contradicts defendant's position. Both the United States and Louisiana State Supreme Courts have held that:
"The right against self-incrimination is not implicated in the gathering of such physical evidence as a blood sample to be subjected to the scientific test. State v. Graham, 278 So.2d 78 (La.1973); State v. Dugas [252 La. 345] 211 So.2d 285 (1968); Schmerber v. California, 384 U.S. 757 [86 S.Ct. 1826, 16 L.Ed.2d 908] (1966)" State v. Williams, 375 So.2d 931 (La.1979).
See also State v. Spence, 418 So.2d 583 (La.1982); State v. Hathaway, 411 So.2d 1074 (La.1982); State v. Carthan, 377 So.2d 308 (La.1979).
In State v. Carthan, the defendant was being held on charges of sexual assault. In that case the court held that the taking of blood and penile discharge samples from the defendant was not unreasonable and did not violate his Fourth Amendment rights.
"Defendant contends that the testing procedure violated his privilege against self-incrimination. This argument is without merit. The privilege protects an accused only from being compelled to testify against himself; as such it applies only to evidence of a testimonial or communicative nature. Schmerber v. State of California, [384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)]; State v. Smith, 359 So.2d 157 (La.1978); State v. Wilson, 329 So.2d 680 (La.1976). Testing of bodily evidence, i.e., blood, urine, breath, violates no privilege against self-incrimination." Carthan, at 312.
For the reasons stated this assignment is without merit.
ASSIGNMENTS OF ERROR NOS. 2 AND 6 (BRADFORD)
Through these assignments defendant Bradford argues that the trial court erred in denying his motion to suppress evidence in that the defendant was unlawfully detained, interrogated and arrested without a warrant and without probable cause. Defendant claims that he was arrested in violation of his rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.
The defendant asserts that the seizure of the evidence sought to be suppressed occurred when his person and clothing were taken from the hotel room to the police station without a warrant and without probable cause. The defendant asserts that this evidence was not taken after the arrest but that a "taking" was effected when the police escorted defendant to headquarters for questioning.
The warrantless arrest and subsequent seizure of evidence from Bradford was based on probable or reasonable cause. La.C.Cr.P. Art. 213 provides in part:
"A peace officer may, without a warrant, arrest a person when:
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer."
In State v. Arceneaux, 425 So.2d 740 (La. 1983), the Court elaborated upon the meaning of this provision:
"Reasonable cause, which we have treated under this article as consonant with the probable cause concept, exists when the facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in believing that the person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 *1165 L.Ed.2d 142 (1964); State v. Drew, 360 So.2d 500 (La.1978). Probable cause may be judged by the probabilities and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Drew, supra. Compliance with these standards is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. Drew, supra." State v. Arceneaux at 743.
See also State v. Latin, 412 So.2d 1357 (La.1982); State v. Drott, 412 So.2d 984 (La.1982); State v. Leatherwood, 411 So.2d 29 (La.1982).
The record reveals that the officers had reasonable cause to believe a crime had been committed. The officer had seen the victim. His physical condition alone was evidence that a crime had been committed against his person. Two eye witnesses, and later the victim, identified the suspect and told the officers about the beating. The police had viewed the blood-soaked room where the beating took place. They then found the identified suspects with what appeared to be human blood spattered on their clothing and shoes. The officers had "reasonably trustworthy information sufficient to justify a man of ordinary caution in believing that the person[s] to be arrested [had] committed a crime." Arceneaux, at 743.
The defendant's clothing was taken as evidence after he was placed under arrest. The record indicates that the arrest actually took place when the defendant was at the police station although sufficient probable cause existed at the time of detention. The defendant argues that there were no exceptions to the warrant requirement which justifies this warrantless seizure. However, the record indicates that the seizure was necessary to prevent destruction of material evidence. The "search" and seizure was of evidence clearly within the defendant's immediate control. Had the clothing been left with defendant for any period of time following arrest he could have easily destroyed such evidence. The seizure was made subsequent to a valid arrest and as a means to preserve evidence, therefore it was legal. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Drott, supra; State v. Bradford, 298 So.2d 781 (La.1974).
For the reasons stated these assignments are without merit.
ASSIGNMENT OF ERROR NO. 14 (BRADFORD)
Through this assignment defendant Bradford argues that the trial court erred in sustaining the State's objection to certain testimony by the victim. The testimony at issue concerned the filing of a civil suit indirectly connected to this incident. The defendant argues that this testimony could have shown bias on the part of a witness, namely the victim.
The defendant argues that in order to protect his constitutional right to full confrontation of witnesses through complete cross examination, that defense should have been allowed to question the victim concerning his civil suit against the cab company whose cab refused to pick him up and transport him to a hospital when he was obviously injured. The defendant maintains that such evidence may have demonstrated the witness' prejudice and bias in his testimony against the defendant.
If a witness has a special bias or prejudice personally against the defendant and an interest particular to the case, concerning such bias, the defendant must be allowed to cross-examine. State v. Perry, 420 So.2d 139 (La.1982); State v. Albert, 414 So.2d 680 (La.1982); and State v. Robinson, 337 So.2d 1168 (La.1976).
Defendant argues under La.R.S. 15:492 and the holding in State v. Kellogg, 350 So.2d 656 (La.1977), that his right to full cross examination allows him to question this witness regarding the aforementioned civil suit.
La.R.S. 15:492 states:

*1166 "When the purpose is to show that in the special case on trial the witness is biased, has an interest, or has been corrupted, it is competent to question him as to any particular fact showing or tending to show such bias, interest or corruption, and unless he distinctly admit such fact, any other witness may be examined to establish the same."
In Kellogg, supra, the victim filed a civil suit against the defendant. Here, the victim has a civil suit pending against a cab company. The outcome of this criminal proceeding would not affect that suit; regardless of the results reached at trial of defendants, the issues of the civil case remain distinct and unrelated, without any bearing on defendants' convictions. The issue in this case was whether the State could prove that the defendants were guilty as charged. The issue in the civil suit was whether the cab driver was liable for refusing to aid the victim in need of medical attention. Mr. Moores' civil suit did not depend upon the conviction of defendant.
"With regard to this method of impeachment [La.R.S. 15:492] the decisions of Louisiana jurisprudence have generally permitted full scope of cross-examination in the interests of exposing, for jury evaluation, any bias or interest of the witness which might influence his perceptions or color his testimony."
On the other hand, the bias permitted to be exposed must be personal against the defendant rather than general in nature, and the interest must be particular as to the case; therefore general prejudices or special biases or interests too irrelevant to or too remote to the issues of the case at trial have been considered improper as impeachment for this purpose." State v. Robinson, 337 So.2d 1168 (La.1976).
There is little doubt that the victim had some bias or prejudice against the defendant. He had suffered a brutal beating from the defendant and the other assailants. But that bias was obvious to the jury and was general in nature. The jury believed the victim's testimony in spite of this bias. There is no reason to speculate that the jury would have discounted his testimony because of a pending civil suit which was totally unconnected to the defendant, even though it arose out of this incident. The victim's interest in his civil suit against the cab company was too remote and irrelevant to the issues of this case. Therefore, the testimony is considered improper as impeachment for this purpose.
For the reasons stated there is no merit in this assignment of error.
ASSIGNMENT OF ERROR NO. 20 (BRADFORD)
By this assignment defendant Bradford asserts that the trial court erred in refusing to grant his motion for a mistrial. The defendant argues that the Court made improper comments on the evidence which unduly prejudiced the jury. La.C.Cr.P. Art. 772 provides that:
"The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted."
The defendant argues that the comment by the court in an exchange between the State and defense counsel constituted an improper comment by the trial judge in contravention of La.C.Cr.P. Art. 772.[2] Defendant *1167 argues that the court made improper comments on the evidence when the trial judge admonished defense counsel for making inferential remarks.
The court's comment was not improper; the comment was made in response to attempts by defense counsel to improperly influence the jury. There were implications that the State did not want this testimony heard because it would be damaging to its case. The court sustained the State's objection to defense counsel's question yet defense counsel persisted in commenting to the jury. The Judge merely informed defense counsel not to mislead the jury after the court had sustained an objection against the line of questioning. The only improper comment made was the one made by defense counsel. The judge did not comment upon the facts of the case but merely warned defense counsel to respect the court's ruling.
For the reasons stated this assignment is without merit.
ASSIGNMENT OF ERROR NO. 22 (BRADFORD)
ASSIGNMENT OF ERROR NO. 2 (PALMER)
By these assignments both defendants argue that the trial court erred in not granting a mistrial due to improper comments by the district attorney. The defendants claim that the district attorney referred to other crimes committed by the defendant and stated his personal opinion during his closing argument that defendant Bradford was lying.
The defendants argue that the following comments by the District Attorney were beyond the scope of his closing argument and contravene the provisions of La.C.Cr.P. Art. 770[3] and Art. 774.[4]
"So, I have no doubt that an attempted armed robbery took place. I think maybe even a completed armed robbery; however that was not the charge, and you can't return that verdict. I wish you could, but in this case the State has charged an attempted and we'd be certainly satisfied with that."
The prosecutor also remarked during his closing argument:
"Gordon will have you believe that this was so that he could hold off this fellow named Jim and these other people, and could do his good deed and protect the victim. I don't believe that.
The defendant testified. If you believe what the defendant told you, I think that I would have to apologize to you for putting him on trial for these things. But I personally don't believe it."
From the record, the District Attorney's remarks were based on facts which the jury was aware of; the prosecutor recapitulated the evidence presented to the jury. The record indicates that the District Attorney summarized the evidence presented. Moreover he emphasized to the jury that the defendants were charged with attempt and the jury could only consider *1168 those charges, even if the State had put on enough evidence to prove a completed offense. The prosecutor did not mention "other crimes" but merely commented on the strength of the State's evidence.
"It is generally erroneous for the prosecuting attorney to declare his individual opinion or belief that the accused is guilty when an accusation is made in such a manner that the jury may understand that the prosecutor's belief is based on evidence dehors the record, but such opinion is permissible if the prosecutor refers to evidence of record or if it is apparent that his opinion is based on such evidence. State v. Procell, 365 So.2d 484 (La.1978), certiorari denied, 441 U.S. 944 [99 S.Ct. 2164, 60 L.Ed.2d 1046] (1979)."
As to the prosecutor's remarks about defendant's truthfulness, it is apparent that the closing argument, when viewed as a whole, is based upon the evidence produced. The District Attorney's opinion about Bradford's honesty was based expressly on the evidence. Such statements are permissible if the inference drawn is creditable.
"If the prosecutor's argument is expressly or impliedly based upon the evidence, then no error is committed, and statements in closing arguments do not go outside of the evidence if the inference drawn from the evidence is not implausible." State v. Prestridge, 399 So.2d 564, at 579 (La.1981).
For the reasons stated these assignments are without merit.
ASSIGNMENTS OF ERROR NOS. 24 AND 25 (BRADFORD)
Defendant Bradford argues through these assignments that the trial court erred in not permitting him to present evidence showing that the State's effort to locate a material witness listed by the State was not performed with due diligence. Thus defendant claims that the trial court denied him the right to present a defense guaranteed under Article 1, Section 15 of the Louisiana State Constitution of 1974.
The defendant argues that the witness was under the custody and control of the State, i.e., at the time of the trial the witness was a convicted felon released on parole in Louisiana. The defendant argues that a presumption arises from this that the testimony would have been adverse to the State's case. La.R.S. 15:432 provides that:
"A legal presumption relieves him in whose favor it exists from the necessity of any proof; but may none the less be destroyed by rebutting evidence; such is the presumption * * * that evidence under the control of a party and not produced by him was not produced because it would not have aided him ...."
The District Attorney put on evidence showing that the State had diligently tried to produce this witness. Although the witness was a parolee, she had violated parole and left the State. Even the defendant admits knowledge of the fact that the witness had left the State of Louisiana. Because the police's search for this witness proved unsuccessful and the witness left the State without authorization, she could no longer be considered under the State's control or power to place on the stand.
Moreover, the defendant appears to have known the whereabouts of this witness, yet failed to subpoena her or request her as a witness on his behalf. The defense had a better advantage than the State to obtain this witness, yet refused to present her for testimony.
"The presumption of La.R.S. 15:432 does not arise if the witness is equally available to both the state and the defense, as in the instant case, for then the evidence is not `under the control of' either party. State v. Green, 244 La. 80, 150 So.2d 571 (1963), (overruled on other grounds); State v. Blackwell, 298 So.2d 798 (La.1973). See State v. Stickney, 167 La. 1050, 120 So. 853 (1929)."
State v. Simms, 381 So.2d 472, 476 (La. 1980). (Footnote omitted.)
For the reasons stated these assignments are without merit. *1169 ASSIGNMENT OF ERROR NO. 26 (BRADFORD)
By this assignment the defendant argues that the trial court erred in sentencing defendant to an excessive sentence.[5]
In State v. Sepulvado, 367 So.2d 762 (La.1979), the Louisiana Supreme Court decided that the imposition of a sentence even though within the statutory limits may be unconstitutionally excessive in violation of Article 1, Section 20 of the Louisiana Constitution of 1974. A sentence has been determined to be excessive punishment when the penalty is so disproportionate to the crime as to shock the senses of justice or if it is nothing more than the purposeless and needless imposition of pain and suffering. State v. Reed, 409 So.2d 266 (La.1982); State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983). However, due to the trial judge's unique advantage of viewing subjective factors not available from the appeal record he is given a wide discretion in the imposition of sentences within statutory limits, and a sentence imposed by him should not be deemed as excessive in the absence of manifest abuse of that discretion. Sepulvado and Goodman, supra; State v. Howard, 414 So.2d 1210 (La.1982); State v. Bradley, 414 So.2d 724 (La.1982).
We are unable to find any manifest error in this case. Rather, the sentence is manifestly correct. The sentence was imposed following a jury determination of guilt of a particularly heinous and sadistic crime. There is no abuse of discretion here.
ASSIGNMENT OF ERROR NO. 29 (BRADFORD)
ASSIGNMENT OF ERROR NO. 3 (PALMER)
The defendants argue through these assignments that the trial court erred in sentencing them to a term of incarceration without benefit of probation, parole or suspension of sentence in violation of the provisions of La.R.S. 14:27.
Defendant Palmer was sentenced to serve a term of six (6) years of confinement at hard labor without benefit of parole, probation or suspension of sentence; defendant Bradford was sentenced to serve forty-nine and one-half (49½) years at hard labor, without benefit of probation, parole or suspension of sentence for the crime of attempted armed robbery.
La.R.S. 14:27 provides in pertinent part that:
"D. Whoever attempts to commit any crime shall be punished as follows:
* * * * * *
(3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment for the offense so attempted, or both." (Emphasis added).
The defendants allege that imprisonment without benefit of parole, probation or suspension of sentence is not applicable under La.R.S. 14:27. The defendant cites State v. Green, 391 So.2d 833 (La.1980), to support this contention. However, Green does not pertain to these circumstances. Green concerns the crime which falls under La.R.S. 14:27(D)(1), i.e., a crime punishable by death or life imprisonment. The Court held in Green that since La.R.S. 14:27(D)(1) made no provisions other than "at hard labor" the imposition of sentence without benefit of parole, probation or suspension of sentence was improper. Green, supra.
The present sentence falls under the guidelines of La.R.S. 14:27(D)(3) which provides *1170 for sentencing in the "same manner as for the offense attempted." The offense attempted here was armed robbery, a violation of La.R.S. 14:64. La.R.S. 14:64(B) provides that:
"* * *
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than five years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence." (Emphasis added).
By sentencing defendants "in the same manner as for the offense attempted" the Court correctly imposed the same conditions on the defendants' sentences for the attempted conviction as would be imposed for the completed offense. This condition in the statute comprises part of the sentence mandated for the offense of armed robbery. Nevertheless, it has been necessary for the Louisiana State Supreme Court to repeatedly address this question. In its most recent decision on this subject the High Court held:
"[the] question is whether the language of the third penalty clause, section D(3), providing for punishment `in the same manner as for the offense attempted' means that a person who attempts armed robbery shall be sentenced without benefit of parole, probation, or suspension of sentence."
This court decided the question in State v. Patterson, 259 La. 508, 250 So.2d 721 (1971), holding that the phrase `in the same manner' means `at hard labor' and `without benefit of parole, probation or suspension of sentence' as provided for armed robbery. The defendant in the present case argues, as did Patterson, that, because criminal statutes should be strictly construed, imprisonment `in the same manner' must be interpreted to refer only to hard labor and not to loss of eligibility for parole, probation or suspension of sentence. After reconsidering the question, we conclude that this court adopted the correct statutory construction in Patterson...." State of Louisiana ex rel Sullivan v. Maggio, 432 So.2d 854 (La.1983).
For the reasons stated above these assignments are without merit.
ASSIGNMENT OF ERROR NO. 1 (PALMER)
Defendant Palmer alleges by this assignment that the trial court erred in denying defendant's motion for a new trial: (a) as the State failed to present any evidence of specific intent to commit armed robbery and; (b) the State failed to prove an essential element of the offense, i.e., the use of a dangerous weapon.
The defendant argues that the State failed to prove that a dangerous weapon was used because the defendant Palmer put forth testimony that the gun was unloaded and that she and Bradford knew it was unloaded. However, even if defendant knew the gun was not loaded, the victim knew no such fact. Palmer admits she retrieved the gun for Bradford. Bradford held the victim at gunpoint when he escorted him from the hotel room to a phone to call the owner of the lounge. The victim had no idea whether or not the gun was loaded. There is no question that Palmer supplied the gun, and empty or not, the gun was a "dangerous weapon." State v. Leggett, 363 So.2d 434 (La.1978). The record supports the jury's conclusion that the defendants were armed with a dangerous weapon. Furthermore, it is necessary to consider the other instrumentalities used by defendants to coerce the victim to give them his money as dangerous weapons which satisfy an essential element of the offense.
The victim testified that Palmer burned him with a cigarette lighter. His body bore the scars of such torture. It was for the jury as factfinder to decide whether the defendants were armed with a dangerous weapon. The record supports its conclusion that the defendants were so armed.
The State bears the burden of proving every element of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 *1171 (1979);[6]State v. Graham, 422 So.2d 123 (La.1982). The defendant correctly argues that specific intent is an element of the crime of armed robbery. La.R.S. 14:64. However, the record does not support the defendant Palmer's contention that the State failed to prove specific intent to commit an armed robbery. The record further contains ample testimony from which the jury could have concluded that defendant Palmer, along with the others involved, knew that Mr. Moores had about $700.00 in his possession. Testimony indicated that Palmer was in the room when the beating took place, that she actively assisted in torturing the victim to force him to relinquish his money by burning him with a cigarette lighter, and that she procured a gun to further intimidate the victim. Specific intent is an ultimate legal conclusion to be resolved by the factfinder. Graham, supra. The jury heard testimony and viewed evidence sufficient to infer from what was presented that defendant Palmer acted with the specific intent to forcibly take the victim's money from him.
"Although intent is a question of fact, it need not be proven as a fact; instead, it may be inferred from circumstances of transactions and actions of the accused." State v. Fuller, 414 So.2d 306 (La.1982).
See also State v. McDermitt, 406 So.2d 195 (La.1981); In Interest of Franklin, 399 So.2d 671 (La.App. 1st Cir.1981).
For the reasons stated this assignment is without merit.

DECREE
For the above and foregoing reasons, the defendants' convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Assignments of error neither briefed nor argued are considered abandoned. State v. Perry, 420 So.2d 139 (La.1982).
[2] The dialogue at issue was conducted as follows:

"Q. [Gianfala, defense counsel] Moores didn't tell Ken about two women at that time.
MR. SPELL: Objection, Your Honor, he is unless he can establish this witness witnessed the conversation, I don't think ithe's laid a foundation that he can testify to that.
THE COURT: Let me understand you right. You're asking him what did Hollemaninformation did Holleman get, Mr. Gianfala?
MR. GIANFALA: The question, Your Honor, I'll repeat it, was: DidI said: Did Mr. Moores tell Ken Holleman about the two (2) women? That was the question, and I think that's what he's objecting to.
Your Honor, if the State doesn't want to bring in the evidenceif they don't want to bring it in, fine. We'll, you know, if they object to the question, let it go.
MR. SPELL: Your Honor, I'd ask that those comments by the defense counsel be stricken from the record,
THE COURT: Mr. Gianfala,
MR. SPELL: and the jury instructed not to
THE COURT: you understand that when an objection is made and the Court rules, that
MR. GIANFALA: Yes, Your Honor.
THE COURT: YOU CANNOT MAKE AN INFERENCE AS TO WHAT SIDE[Emphasis added]."
[3] La.C.Cr.P. Art. 770 provides:

"Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible."
[4] La.C.Cr.P. Art. 774 provides:

"The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case."
[5] The author of this opinion is compelled to state his position as to appellate review of sentences for excessiveness. Our state constitution does not provide for nor does it mandate judicial review of sentences which fall within the limits set by the respective criminal statutes. See State v. Goodman, 427 So.2d 529 (La.App. 3rd Cir.1983), concurring opinion at 533; State v. Vallare, 430 So.2d 1336 (La.App. 3rd Cir. 1983), concurring opinion at 1339, writ denied, 433 So.2d 729 (La.1983). See also State v. Shelby, 438 So.2d 1166 (La.App. 3rd Cir.1983), concurring opinion at 1169.
[6] Although reviewing courts are obligated to follow the Jackson standard as mandated by the Louisiana Supreme Court, the author of this opinion has expressed opposition to this standard because it relegates the reviewing power of the appellate courts to nothing more than "second guessing" the triers of fact. See State v. Anderson, 440 So.2d 205 (La.App.3rd Cir.1983), concurring opinion at 223, and cases cited therein.