507 So.2d 304 (1987)
STATE of Louisiana
v.
Gregory BROWN.
No. CR 86-1191.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1987.
*305 J. Lyle DeBellevue, Crowley, for defendant-appellant.
Jane Bode, Robert T. Cline, Glenn Foreman, Asst. Dist. Atty., Crowley, for plaintiff-appellee.
Before GUIDRY, FORET and CULPEPPER[*], JJ.
GUIDRY, Judge.
Defendant, Gregory Brown, was charged by grand jury indictment with aggravated rape, a violation of La.R.S. 14:42. A jury of twelve (12) found defendant guilty as charged. Defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction based on four assignments of error.

FACTS
On October 6, 1984, Crystal Langlinais and her friend, Janet Habetz, met an acquaintance, Andre Franques, at the Crowley Rice Festival in Crowley, Louisiana. At 11:00 p.m., Crystal and Andre held a private conversation at the corner of a building which was adjacent to an alley, only a one-half block from where the festivities were taking place. Janet waited for them several feet away. While waiting, Janet was approached by three black youths, one of whom she was positively *306 able to identify. Frightened, Janet ran to the corner where Andre and Crystal were standing, told them of the encounter and asked them to hurry. Crystal told her to go stand where she could see her and that she would only be a few more minutes. Approximately five minutes later, over Andre's shoulder, Crystal saw three black youths approaching them from the inside of the alley. The three boys confronted the couple, hit Andre and then robbed him at knife point. Andre was then forced to kneel and face the wall, while Crystal was beaten, dragged back into the alley and raped by each youth. The assailants then grabbed Crystal's purse and quickly exited back into the alley. After helping Crystal dress, Andre left her and Janet in a public area and sought help from a nearby police officer, Raymond Lavergne. Officer Lavergne transmitted a description of the suspects over his radio, i.e., three black males, all wearing blue jeans, two wearing baseball caps, and one wearing a maroonish-colored shirt. On patrol nearby, Officer Ronald Arceneaux heard the transmission. He saw three white youths and asked them if they had lately seen three black males fitting the description. They responded yes and pointed north. Following these directions, Officer Arceneaux spotted three black youths walking in a park about 3.5 blocks from the rape/robbery. At first glance, it appeared that two were wearing caps and two were wearing maroon shirts. As he looked closer, he saw that one youth's hat was all black and had no bill on it so that he did not appear to be wearing a hat. However, all three boys were wearing caps. Defendant was one of these three.[1]
The three boys were stopped and brought to the police station. Later, police found the contents of Crystal's purse strewn in a trail-like manner between the area where the youths were picked up and where the crime occurred. Additionally, two knives precisely fitting the description given by Andre were found in the park within six feet of where the youths were walking when Officer Arceneaux drove past.
At the station, defendant surrendered his outer and inner clothing to police officers for analysis. Medical and forensic experts testified at trial that analysis revealed semen stains found on the victim's underwear, which were consistent with the defendant's blood and salvic reference groups. It was determined that less than one-half of one percent of the black population could have contributed to this stain. Thus, the defendant could not be eliminated as a possible contributor of the stains. Additionally, pubic hairs found in defendant's underwear, shirt and blue jeans were of Caucasian origin, and these hairs were microscopically indistinguishable from the victim's pubic hair. The victim had four negro pubic hairs in her pubic combings, and defendant could not be eliminated as being a possible donor of these pubic hairs. Additionally, defendant and the victim had the same plant and algae material on their clothing. This material was microscopically compatible with the plant and algae material found at the scene of the crime. Woody material found in defendant's underwear and particleboard found on defendant's clothes matched the particleboard the victim was placed on when the rapes occurred, and which was found on the victim's jeans. Upsom board, which is no longer manufactured, was found on defendant's and the victim's clothing, and was found at the scene of the rapes. All board fibers and paint chips found were identical to each other.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant claims that the trial court erred in denying his motion to suppress the clothing seized from him at the Crowley Police Station. Defendant makes two arguments in support of this assignment. First, he urges that by seizing his clothes the police compelled him to give evidence against himself, thus violating his right against self-incrimination. He relies upon State In The Interest of Dino, 359 So.2d 586 (La. *307 1978), to argue that as a juvenile defendant he had not validly waived his privilege against self-incrimination.[2] Secondly, he complains that the seizure of his clothes violated his Fourth Amendment right to be free from unreasonable searches and seizures.
In denying defendant's motion to suppress, the trial judge found that there was probable cause to arrest the defendant and that his clothes were seized incident to a valid arrest. Secondly, he found that the defendant voluntarily consented to turning over his clothes to the police.
Appellant's argument that the taking of his clothes violated his right against self-incrimination is misguided. The privilege afforded by the Fifth Amendment protects an accused only from being compelled to testify against himself; as such, it applies only to evidence of a testimonial or communicative nature. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); State v. Carthan, 377 So.2d 308 (La.1979); State v. Palmer, 447 So.2d 1159 (La.App. 3rd Cir. 1984). The taking of the defendant's clothes is not evidence of a testimonial or communicative nature and is thus not protected by the Fifth Amendment.
Turning to defendant's second argument, that the taking of his clothes violated his constitutional rights guaranteed by the Fourth Amendment, it is axiomatic that a search conducted without a warrant issued upon probable cause is per se unreasonable, unless it falls within one or more of the few specifically established exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). One of these exceptions is the search incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).
La.C.Cr.P. art. 213 provides in part that:
"A peace officer may, without a warrant, arrest a person when: ...(3) the peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; ..."
Thus, for a warrantless arrest to be lawful, it must be based on probable cause. State v. Raheem, 464 So.2d 293 (La.1985). Probable cause to arrest exists when facts and circumstances known to the arresting officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution into believing the person to be arrested has committed a crime. State v. Raheem, supra; State v. Wilson, 467 So.2d 503 (La. 1985), U.S. cert. denied, 106 S.Ct. 281, 88 L.Ed. 246. Probable cause to arrest must be judged by probability and practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Raheem, supra; State v. Stewart, 465 So.2d 206 (La.App. 3rd Cir.1985), writ denied, 468 So.2d 571 (La.1985). Probable cause to arrest is not absolute cause, and to determine its existence, courts must examine facts and circumstances within the arresting officer's knowledge in light of the experience of reasonable people, not legal technicians. State v. Billiot, 370 So.2d 539 (La.1979), U.S. cert. denied, 444 U.S. 935, 100 S.Ct. 284, 62 L.Ed.2d 194 (1979). While mere suspicion is insufficient to justify an arrest, a police officer need not have sufficient proof to convict in order to arrest. State v. Randolph, 337 So.2d 498 (La.1976).
In this instance, it appears that there was probable cause to arrest the defendant. When defendant and his friends were initially stopped by Officer Arceneaux, the police acted on the following information: An alleged aggravated rape had just occurred minutes before within 3½ blocks of the location where the three youths were stopped. The victims had described their assailants as three black youths, all wearing blue jeans, two wearing baseball caps and at least one wearing a maroon shirt. The three youths stopped by *308 Officer Arceneaux matched the description precisely, except that one youth wore a black baseball cap, without a bill, which presented the appearance that he wore no cap at all. Officer Arceneaux rechecked the description with headquarters before arresting the youths. Under the facts presented, the police had probable cause to detain and arrest the defendant.
As previously noted, a search incident to an arrest is one of the exceptions to the warrant requirement. Essentially, the justification for the warrantless search of a person arrested for a crime is based upon the exigency of removing any weapons and of preserving any evidence within the immediate reach of the arrested person. State v. Jenkins, 468 So.2d 1347 (La.App. 1st Cir.1985).
In State v. Palmer, 447 So.2d 1159 (La. App. 3rd Cir.1984), the defendant's clothing was taken as evidence after he was placed under arrest. On appeal, he argued that there were no exceptions to the warrant requirement which justified this warrantless seizure. This court concluded:
"... However, the record indicates that the seizure was necessary to prevent destruction of material evidence. The `search' and seizure was of evidence clearly within the defendant's immediate control. Had the clothing been left with defendant for any period of time following arrest he could have easily destroyed such evidence. The seizure was made subsequent to a valid arrest and as a means to preserve evidence, therefore it was legal." (Citations omitted). Palmer, supra, at 1165.
We therefore find that, since defendant's clothes revealed pubic hair from the victim, upsom board particles, and algae, evidence which placed defendant at the scene of the crime, and since defendant was validly arrested, the police were justified in seizing these items of clothing.
In brief, defendant makes an oblique reference that the "medical testing procedures objected to constitutes searches of the person". It is assumed that this refers to the taking of body fluid and hair samples from defendant for the rape evidence kit. However, it is noted that the motion to suppress did not address the rape evidence kit, and is thus, not properly included in this assignment of error. Additionally, the rape evidence kit was obtained pursuant to a search warrant, the validity of which was not assailed by defendant at the trial level.
In light of the foregoing, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment of error, defendant contends that the trial court erred in permitting the prosecution to systematically exclude all prospective black jurors through the use of peremptory challenges. This complaint was first brought to the trial court's attention in defendant's motion for a new trial. At the hearing on the motion, defendant presented neither evidence nor argument in support of this allegation. In denying the motion for new trial and, in particular, the allegations set forth in this assignment of error, the trial judge stated:
"... there must be established a prima facia [sic] case of systematic exclusion of black [sic] from the jury over a period of time through the use of pre-emptory [sic] challenges by the State.
There has been no such showing or even an attempt to show such systematic exclusion over a period of time by the State through the utilization of a pre-emptory [sic] challenge. So, I will deny the New Trial Motion on that grounds [sic]."
First, we observe that the proper method to challenge the compostion of the jury venire is by a motion to quash. State v. Bias, 354 So.2d 1330 (La.1978); State v. Charles, 350 So.2d 595 (La.1977). But see State v. Newman, 491 So.2d 174 (La.App. 3rd Cir.1986). Therefore, there is serious doubt that defendant's challenge to the validity of the jury venire was properly preserved by raising it for the first time in his motion for a new trial. State v. Charles, supra. In any event, for the reasons which follow, we find no merit in this assignment of error.
*309 We note that the trial court's reliance upon the test as set forth in Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 959 (1965), to the effect that a defendant is not considered to have been denied equal protection by the State's use of peremptory challenges against blacks unless the defendant shows a systematic exclusion of blacks by the State over a period of time, is incorrect under later jurisprudence declared retroactive. In Batson v. Kentucky, 476 U.S. ___, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court enunciated a more lenient standard for establishing an unconstitutional exclusion of black jurors by the State through the use of peremptory challenges. In Batson, the U.S. Supreme Court set forth the requirements for establishing a prima facie case of purposeful racial discrimination in selection of the petit jury venire as follows:
"... [A] defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial. To establish such a case, the defendant first must show that he is a member of a cognizable racial group, Castaneda v. Partida, supra, 430 U.S. [482], at 494, 97 S.Ct. [1272], at 1280, [51 L.Ed.2d 498 (1977)] and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits `those to discriminate who are of a mind to discriminate.' Avery v. Georgia, supra, 345 U.S. [559], at 562, 73 S.Ct. [891], at 892, [97 L.Ed. 1244 (1953) ]. Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empanelling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination."
In the later case of Griffith v. Kentucky, ___ U.S. ___, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), the newly declared constitutional rule enunciated in Batson, supra, was made retroactive to all cases, state or federal, pending on direct review or not yet final. Therefore, in this case, we must consider defendant's claim of "purposeful discrimination" under the standard enunciated in Batson, supra.
Although appellant has satisfied the first two criteria of Batson, the record otherwise clearly reflects that the prosecutor did not exercise his right of peremptory challenge to exclude black veniremen from the petit jury on account of their race. Specifically, we observe that appellant complains of the exclusion of Mercedes White, Cindy Brackins, Frank Guidry, Jr., Marcel Dugas, and Dorothy Mae Burnette, all of whom were removed from the jury venire on peremptory challenges of the State. At oral argument, it was conceded that Marcel Dugas was not a black man. The record reflects that Frank Guidry, Jr., although black, was peremptorily challenged by the State after interrogation revealed a conviction of Guidry's brother of a felony by the district attorney conducting the instant prosecution. As to Mercedes White, the record reflects that the prosecutor had previously represented Mrs. White's husband in a civil matter. The record reflects that Cindy Brackins and Dorothy Mae Burnette were likewise challenged peremptorily for justifiable reasons totally unrelated to their race. Finally, we observe that Mary Ann Senegal Landry, a black, was chosen as an alternate juror, although the State had not utilized all of its peremptory challenges. In sum, the record is totally devoid of any evidence which would support the inference that the prosecution used peremptory challenges for the purpose of excluding any veniremen from the petit jury on account of their race.
For these reasons, we find no merit to this assignment of error.

ASSIGNMENT OF ERROR NO. 3
Appellant next contends that the trial court erred in denying his motion for a *310 mistrial based upon allegedly improper conduct of an assistant district attorney during the testimony of one of the victims, Andre Franquez.
During cross-examination of Franquez, defense counsel asked him if he could identify the defendant as one of the assailants on the night in question. Franquez testified that he did recognize Gregory Brown as one of the black males who held him at knife point. When the trial reconvened on the day following this testimony, defendant moved for a mistrial, alleging that the assistant district attorney had "signalled" to Franquez to answer "Yes" to defense counsel's question of whether he could identify Brown as one of the assailants.
An immediate hearing was held on this motion outside the presence of the jury, after which, the trial judge denied defendant's motion.
La.C.Cr.P. art. 775 provides, in pertinent part:
"...
Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, ..."
The determination as to whether a mistrial should be granted under this provision is within the sound discretion of the trial judge, and a denial of a motion for mistrial will not be disturbed on appeal absent an abuse of that discretion. State v. Smith, 433 So.2d 688 (La.1983).
At the hearing on the motion, defendant's mother, Joyce Brown, testified that she observed the prosecutor get out of his chair, move over and signal to the witness, before the witness responded that he recognized defendant. The defendant also testified that he saw Cline nod his head affirmatively after the identification question was posed to the witness.
In opposition to defendant's motion, the State called as witnesses, assistant district attorney Jane Bode, Deputy Sheriff Walter Harrington, and assistant district attorney Robert Cline. Ms. Bode testified that during the questioning of Andre Franquez, she was sitting next to Cline, and that she did not see him make any affirmative motion directed to the witness. In fact, Ms. Bode stated that after the question was asked to Andre, she and attorney Cline exchanged remarks. Deputy Harrington testified that he did not see any movement by Cline directed to the witness Franquez. Cline testified that he did not make any movement or signal directed toward the witness. In his ruling, the trial judge specifically found that the defense witnesses in support of the motion were not credible and that the evidence did not support the motion.
When there is conflicting testimony as to a factual matter, the question of the credibility of witnesses is within the sound discretion of the trier of fact. His factual determinations are entitled to great weight and will not be disturbed unless clearly contrary to the evidence. State v. Klar, 400 So.2d 610 (La.1981). In the instant case, defendant has not shown that the trial judge abused his discretion in finding the testimony of the State's witnesses more credible than those of the defense. Thus, there is no showing that the trial judge abused his discretion in denying the defendant's motion for a mistrial.

ASSIGNMENT OF ERROR NO. 4
In his final assignment of error, appellant contends that the trial court erred in allowing into evidence two knives found on the night the crime was committed. Appellant urges that there was no nexus shown by the State linking the knives to him. Appellant argues that since Officer Arceneaux testified that he did not see defendant discard the knives, and there was no other link between the defendant and the knives, the introduction into evidence was improper, highly prejudicial and non-probative, and thus such admission constitutes reversible error.
At trial, the State introduced testimony from Officer Ronald Arceneaux, Captain Charles Eaglin, Captain Gilford Richard, and Andre Franquez regarding the knives in question. Officer Arceneaux testified *311 that he found the first knife, an Old Timer lock-blade knife, about one foot from the sidewalk in the area where he initially spotted and stopped the three suspects. A second knife, a Schrade lock-blade, was found within six feet of the first knife by Captain Eaglin. Captain Richard was in charge of the investigation when the knives were found. Andre Franquez testified that the knives the assailants used on him appeared to be the same as those shown in court. Andre further testified that he was very familiar with various types of knives as he had a knife collection of his own.
Defendant argues that because the State did not prove that the knives belonged to defendant, they were inadmissible. We disagree.
The admission of physical evidence requires that a foundation be laid, either by positive visual identification by a witness or through the establishment of a chain of custody. State v. Overton, 337 So.2d 1201 (La.1976); State v. Guillory, 438 So.2d 1256 (La.App. 3rd Cir.1983). The foundation for admitting demonstrative evidence need only establish connexity by a preponderance of the evidence; it is sufficient that it is more probable than not that the object is connected with the case. State v. Jackson, 309 So.2d 318 (La.1975). The lack of a positive identification simply goes to the weight to be given the evidence by the jury. State v. Miles, 339 So.2d 735 (La.1976). It is within the trial judge's discretion to determine whether there is sufficient connexity to allow for the introduction of evidence. In the absence of an abuse of such discretion, his determination will not be disturbed. Miles, supra.
In the instant case, there was ample evidence to establish that it was more probable than not that the knives introduced into evidence were the same knives used in the crime. The arresting officer found the knives within one to six feet of where he initially spotted the suspects and only 3½ blocks from the crime scene itself. One of the victims, who was knowledgeable about knives, positively identified the knives as very similar to the ones used in the crime. Additionally, an expert forensic scientist positively concluded that defendant had been at the scene of the crime based on his analysis of numerous identical items recovered from the defendant, the victim and the crime scene. We therefore do not find that the trial judge abused his discretion in this ruling.
This assignment of error is without merit.
For the above and foregoing reasons, the conviction and sentence of defendant, Gregory Brown, is affirmed.
AFFIRMED.
NOTES
[*] Hon. William A. Culpepper, Judge, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Also arrested and charged with the commission of the above crimes were Christopher Wheeler and Steven Domingue. Wheeler and Domingue were tried separately.
[2] At the time of his arrest, defendant was only five days shy of being 16 years old, and his two companions were already 16 years old.